ORIGINAL

KOBAYASHI, SUGITA & GODA

LEX R. SMITH                    3485-0
lrs@ksglaw.com
CRAIG K. SHIKUMA                4018-0
cks@ksglaw.com
KENNETH M. NAKASONE   6942-0
kmn@ksglaw.com
999 Bishop Street, Suite 2600
Honolulu, Hawai`i 96813-3889
Tel:   (808) 539-8700
Fax:   (808) 539-8799

EDMUNDS &VERGA
Attorneys at Law, A Law Corporation

JOHN S. EDMUNDS               734-0
jedmunds@ev-law.com
RONALD J. VERGA              2638-0
rverga@ev-law.com
841 Bishop Street, Suite 2104
Honolulu, Hawai`i 96813
Tel:   (808) 524-2000
Fax:   (808) 528-3585

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 2 1 2006

at __3__ o'clock and __50__ min. __ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MOKULEIA PRESERVATION PARTNERS, L.L.C.; MALANI, INC. and MOKULEIA POLO FARMS, L.L.C., <br><br> Plaintiffs, <br><br> vs. | CIVIL NO. 04-00283 DAE/BMK <br><br> PLAINTIFFS MOKULEIA PRESERVATION PARTNERS, L.L.C.; MALANI, INC. AND MOKULEIA POLO FARMS, L.L.C.'S MEMORANDUM IN OPPOSITION TO DEFENDANT |

WESTERN UNITED LIFE
ASSURANCE COMPANY,

   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

WESTERN UNITED LIFE
ASSURANCE COMPANY'S *EX
PARTE* MOTION TO SHORTEN
TIME FOR HEARING ON
DEFENDANT WESTERN UNITED
LIFE ASSURANCE COMPANY'S
MOTION TO DISMISS *IN REM*
CLAIMS AND FOR
EXPUNGEMENT OF NOTICE OF
PENDENCY OF ACTION;
EXHIBITS A – E; DECLARATION
OF A. BERNARD BAYS, ESQ.;
LEX R. SMITH, ESQ.;
DECLARATION OF JOHN S.
EDMUNDS; AND CERTIFICATE
OF SERVICE

NO TRIAL DATE

## TABLE OF CONTENTS

<u>PAGE</u>

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    NO VALID BASIS JUSTIFIES SHORTENING TIME FOR HEARING
      DEFENDANT'S MOTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Defendant Has Repeatedly Delayed Bringing These Motions . . . . . 2

      B.    Implementation of the "Standstill" Agreement . . . . . . . . . . . . . . . . 4

      C.    Expiration of the "Standstill" Agreement . . . . . . . . . . . . . . . . . . . . . . 6

II.   WULA'S MOTIONS TO DISMISS AND FOR EXPUNGEMENT OF LIS
      PENDENS ARE SUFFICIENTLY WEAK ON THEIR MERITS THAT
      THIS COURT SHOULD NOT SHORTEN THE TIME WITHIN WHICH
      TO HEAR THEM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      A.    The Hawaii and Washington Statutory Scheme for Insurance
            Company Rehabilitation and Liquidation . . . . . . . . . . . . . . . . . . . . 12

      B.    WULA Is in Rehabilitation, Not Liquidation, and Important
            Consequences Result from That Distinction . . . . . . . . . . . . . . . . . . 13

      C.    The Lis Pendens is Proper and Not Subject to Expungement . . . . . 20

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

i

# TABLE OF AUTHORITIES

PAGE

## **CASES**

<u>Hobbs v. Don Mealey Chevrolet, Inc.</u>, 642 So.2d 1149 (Fla. App. 1994) . . . 19, 20

<u>In re Allcity Insurance Company</u>, 66 A.D.2d 531, 413 N.Y.S.2d
   929 (App. Div. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

<u>S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club</u>, 75 Haw. 480,
   866 P.2d 951 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Smalls v. Weed</u>, 293 S.C. 364, 360 S.E.2d 531 (S.C. App. 1987) . . . . . . . . . 17, 19

<u>State ex rel. Dykhouse v. Edwards</u>, 908 S.W.2d 686 (Mo. 1995) . . . . . . . . . . . 20

## **STATUTES**

Haw. Rev. Stat. § 431:13-305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Haw. Rev. Stat. § 431:15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Haw. Rev. Stat. § 431:15-103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Haw. Rev. Stat. § 431:15-301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Haw. Rev. Stat. § 431:15-302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Haw. Rev. Stat. § 431:15-303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Haw. Rev. Stat. § 431:15-304 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 18

Haw. Rev. Stat. § 431:15-306 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Haw. Rev. Stat. § 431:15-307 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Haw. Rev. Stat. § 431:15-310 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Haw. Rev. Stat. § 431:15-313 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 18, 19

Haw. Rev. Stat. § 431:15-356 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Haw. Rev. Stat. § 431:15-407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Haw. Rev. Stat. § 431:15-408 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MOKULEIA PRESERVATION
PARTNERS, L.L.C.; MALANI, INC.
and MOKULEIA POLO FARMS,
L.L.C.,

        Plaintiffs,

vs.

WESTERN UNITED LIFE
ASSURANCE COMPANY,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL NO. 04-00283 DAE/BMK

PLAINTIFFS MOKULEIA
PRESERVATION PARTNERS,
L.L.C.; MALANI, INC. AND
MOKULEIA POLO FARMS,
L.L.C.'S MEMORANDUM IN
OPPOSITION TO DEFENDANT
WESTERN UNITED LIFE
ASSURANCE COMPANY'S *EX
PARTE* MOTION TO SHORTEN
TIME FOR HEARING ON
DEFENDANT WESTERN UNITED
LIFE ASSURANCE COMPANY'S
MOTION TO DISMISS *IN REM*
CLAIMS AND FOR
EXPUNGEMENT OF NOTICE OF
PENDENCY OF ACTION

PLAINTIFFS MOKULEIA PRESERVATION PARTNERS, L.L.C.;
MALANI, INC. AND MOKULEIA POLO FARMS, L.L.C.'S
MEMORANDUM IN OPPOSITION TO DEFENDANT WESTERN
UNITED LIFE ASSURANCE COMPANY'S *EX PARTE* MOTION TO
SHORTEN TIME FOR HEARING ON DEFENDANT WESTERN
UNITED LIFE ASSURANCE COMPANY'S MOTION TO DISMISS
*IN REM* CLAIMS AND FOR EXPUNGEMENT OF
NOTICE OF PENDENCY OF ACTION

I.    NO VALID BASIS JUSTIFIES SHORTENING TIME FOR HEARING
      DEFENDANT'S MOTIONS

    A.    Defendant Has Repeatedly Delayed Bringing These Motions

Defendant Western United Life Assurance Company (hereinafter

"WULA") claims that "great urgency" justifies having its present motions heard

on an expedited basis. (Declaration of Terrence Yamamoto, Esq. attached to

WULA's ex parte Motion). But WULA has known of the need to file those

motions ever since May 17, 2005. On that date, a status conference was held in

this matter before the Honorable David A. Ezra at which the parties stipulated, and

this Court ordered, that "If Defendant wishes to present any written opposition to

the Motion [to Compel Arbitration] or any jurisdictional, related or

countermotions, then Defendant shall serve, but not file, all such papers at least

eighteen days prior to July 6, 2005, and the parties shall serve, but not file, any

response within the time period called for by the Local Rules." (emphasis added).

(A copy of that Stipulation and Order is Exhibit A hereto.) Counsel signed that

2

Stipulation on May 19th; it was filed with this Court's signature on June 1, 2005. Id. This Court further ordered that "4. Upon reinstatement of the Motion [to compel arbitration], the Court shall order that all documents served pursuant to paragraph 3 above will be filed nunc pro tunc. The Court shall thereafter hold a hearing and dispose of the Motion as well as any other motions that may be filed by Defendant." Id.

By Stipulation and Order filed June 13, 2005, this Court reinstated the "Standstill" agreement described below. This excused WULA from filing said motions while the Standstill remained in effect. However, as discussed below, although extended several times and once reinstated, the "Standstill" agreement expired on October 12, 2005. (See Second Stipulation and Order, signed by Magistrate-Judge Kurren, filed October 4, 2005, p. 2, paragraph 3)(a copy of which is Exhibit B hereto). It was never then reinstated or revived. (Declaration of John S. Edmunds). But WULA never moved, answered or otherwise pled to the complaint until now and has therefore been in default (now for the second time) for more than four months.

WULA announced its "need" to file both its jurisdictional motion to dismiss and its motion to expunge the lis pendens long ago, in its May 27, 2005, Scheduling Conference Statement (a copy of which is Exhibit C hereto). There,

WULA admitted it was served with Plaintiffs' complaint on October 7, 2004 (at p. 2, footnote 2). Thus, already in default (for the first time), WULA expressly represented: "WULA <u>will</u> <u>now</u> proceed to file a responsive pleading" (Exhibit B, p. 3, footnote, last sentence). WULA also made clear that by the term "responsive pleading" it meant the very motions it now claims must be heard on an expedited basis: "Nevertheless, it is WULA's intent- - <u>in the event Plaintiff's motion to compel arbitration is reinstated as noted below</u>, to serve and file jurisdictional, related or countermotions to dismiss and/or stay these proceedings, based in part on the ongoing rehabilitation of WULA under Washington statutory law." (Ex. B, p. 7) (emphasis added). WULA's footnote to that quote notes that even then, it intended to challenge the <u>lis</u> <u>pendens</u> in this case: "If WULA's motion is granted, dismissal should also expunge the Notice of Pendency of Action, which is predicted [sic] upon the Complaint." (Ex. B, p. 7, hereto, footnote 6).

B.    <u>Implementation of the "Standstill" Agreement</u>

This Court will recall that on December 7, 2004, Plaintiffs filed a Motion to Compel Arbitration which WULA wanted withdrawn so it could pursue marketing and selling the property in question and distributing to Plaintiffs their contractually-mandated share of the proceeds, all without the obvious interference that litigation would create.

4

Significantly, in the above-quoted portion of WULA's earlier Scheduling Conference Statement, WULA agreed that if the Motion to Compel Arbitration was withdrawn, and that withdrawal was approved by this Court, reserving Plaintiffs' right to reinstate that Motion, until that Motion was reinstated, WULA would not file the "jurisdictional, related or countermotions to dismiss" it described in its Scheduling Conference Statement (Ex. C, supra). WULA made that condition clear to this Court and to counsel: "Nevertheless, it is WULA's intent–in the event Plaintiffs' motion to compel arbitration is reinstated as noted below –to serve and file jurisdictional , related or countermotions to dismiss...." (Id., at p. 7).[1]

The Standstill also stated that, "...subject to approval of this Court," a further stipulation could be filed "...to extend the term of this standstill agreement." (Id., p.5, para. 8, lines 4-5). But the Standstill also made clear that if it ever expired, before any motions were filed or hearings sought, a Scheduling Conference statement was required to be filed:

> In the event the issues in dispute in this case are not fully and finally resolved between the parties in this case within 90 days of the date of the entry of this

---

[1] The Standstill also stipulated and ordered that "During the period of this standstill agreement (or any extension thereof), no discovery or other litigation of any kind shall be conducted or engaged in by any of the parties hereto with respect to this case." (Id., p. 5, para. 7) (emphasis added)].

Stipulation and Order, then within said 90 day period, counsel for the parties may, subject to approval of this Court, file a stipulation to extend the term of this standstill agreement. <u>Otherwise, the parties will promptly notify the Court, and as set forth above, request that a new Scheduling Conference be set for the first available date on the Court's calendar to discuss proceeding with the litigation of this matter and to schedule any hearings related thereto.</u>"

<u>Id.</u>, p. 5, para. 8 (emphasis added).

Thus, a model was put in place under which no party could conduct litigation while the Standstill was in place. But if the Standstill ever expired, <u>before any party could move forward with litigation</u>, the Court had to be "promptly" notified and "a new Scheduling Conference...set...to discuss proceeding with the litigation of this matter and to schedule any hearings related thereto." <u>Id.</u> WULA has never taken any such steps before filing the instant motions.

C.    <u>Expiration of the "Standstill" Agreement</u>

It is undisputed that the Standstill lapsed on October 12, 2005. (On October 4, 2005, a Second Stipulation and Order (being Ex. B hereto) was signed by counsel for the parties and approved by Magistrate Kurren recited that the "...deadline extending the standstill agreement" of October 3, 2005, "...shall be, and the same is hereby, extended through and including October 12, 2005." No

further stipulations or orders extending the "Standstill" agreement have ever been signed by Plaintiffs' counsel or approved by the Court. (Edmunds Declaration).

Surely, under the "Otherwise..." provision of the Standstill agreement's terms, WULA was required to request a scheduling conference with the Court before seeking to move forward on the "litigation track".

Or, if WULA claims it was <u>not</u> required to seek a Scheduling Conference and was free, absent Court authorization, to move forward on the "litigation track", WULA was required to file an answer or other responsive pleading to the Complaint. WULA should not, and cannot, have it both ways, and before this Court shortens the time to hear the current motions filed by WULA, the consequences of this long lapse of time must be considered. Under the doctrines of waiver and estoppel, should not WULA's long delay prevent it from now seeking to expunge the <u>lis</u> <u>pendens</u>? And before a hearing is held on those motions, should not Plaintiffs be entitled to take discovery concerning, e.g., these estoppel and waiver issues?[2]

---

[2] Plaintiffs recognize that under Rule 12 (h) (3) of the Federal Rules of Civil Procedure, WULA's claim of lack of subject matter is not lost by default or delay. WULA's claim of lack of subject matter jurisdiction is seriously misplaced; as is shown below, this Court indeed has subject matter jurisdiction over this case. Before reaching that issue, however, surely WULA's long delay in raising the question does not now entitle it to an expedited hearing.

D.    Proceedings Before Magistrate-Judge Kurren

Both during the period of the Standstill agreement and after it
expired, Magistrate-Judge Kurren held ongoing and repeated conferences in this
case. Thus, after the June 3, 2005 Rule 16 Conference which he held, additional
status conferences were held as follows:

September 7, 2005-status conference

August 10, 2005-scheduling conference

October 12, 2005-status conference

October 10, 2005-status conference

November 16, 2005-trial re-scheduling conference

January 12, 2006-status conference

January 26, 2006-status conference

February 7, 2006-settlement conference

Counsel for each of the parties attended each of the listed
conferences, and in each case, one or more of Plaintiffs attended. (Declaration of
John S. Edmunds). At each of these conferences, WULA's counsel represented to
the Court and opposing counsel that WULA was actively marketing the property
in question and wanted more time within which to do so. (Edmunds Declaration).
And, in reliance on those representations, Plaintiffs and their counsel continued to

8

agree to give WULA more time. In addition, throughout WULA's marketing and sales efforts, it is undisputed that Plaintiffs themselves spent much time and effort gathering and furnishing WULA whatever background and marketing information WULA requested to assist in the marketing and sales effort. (Edmunds Declaration).

Throughout those meetings with Magistrate Kurren, the theme was always the same: WULA wanted to market and sell the property for the highest price possible <u>and to pay Plaintiffs the distributions to which they were entitled pursuant to their written contracts with WULA</u>. Such representations were made to Magistrate-Judge Kurren repeatedly. (Declaration of John S. Edmunds)

Indeed, it was precisely <u>because of</u> these repeated assurances that Plaintiffs continued to agree with the continuation of the status conferences and with not returning to the "litigation track" in this case. (Edmunds Declaration).

Obviously, Plaintiffs recognized their right to return to litigation and to have their motion to compel arbitration reinstated. But they knew the property was being marketed and, preferring the fair, equitable and just settlement which WULA promised them at these "status" conferences before Magistrate-Judge Kurren, they did not pursue their litigation remedies. (Edmunds Declaration).

Ultimately, WULA's marketing efforts succeeded, a buyer was found and a closing date was set. As additional status conferences were set by Magistrate Kurren, based on WULA's continuing representations that Plaintiffs would be paid and this litigation settled, Plaintiffs agreed to continue the matter and not move the case back to the "litigation track". Magistrate Kurren then set a Settlement Conference for February 7, 2006 (and has scheduled another for March 9, 2006). At that conference, Plaintiffs appeared, as did all counsel, together with WULA's representative, Mr. Wayne Metcalf, the Washington state court-appointed Receiver for WULA. At that settlement conference, Mr. Metcalf expressly represented to Magistrate Kurren, all counsel and Plaintiffs, that he was going to settle this litigation with Plaintiffs and pay to them the fair, just and equitable amounts to which they were entitled under their written contracts with WULA. (Edmunds Declaration). At that Settlement Conference, <u>no</u> <u>mention</u> was made of jurisdictional challenges, of seeking to have the <u>lis</u> <u>pendens</u> expunged or of WULA doing anything to put this case back onto the "litigation track." (Edmunds Declaration)[3]

---

[3] Plaintiffs' counsel does acknowledge that at the status conference held by Magistrate Kurren on either January 12th or 26th, WULA's counsel did raise the possibility of filing a motion dealing with the <u>lis</u> <u>pendens</u> and stated that he might move <u>ex</u> <u>parte</u> for an order shortening time within which to do so. Plaintiffs' counsel objected to any <u>ex</u> <u>parte</u> motion being filed at that time. (Edmunds' Declaration).

10

Why, then, does WULA suddenly claim the need for an expedited hearing to within which to have its motions to dismiss and to expunge the <u>lis pendens</u> heard?  True, there is a March 15, 2006 closing date, but Plaintiffs and Plaintiffs' counsel have repeatedly advised opposing counsel that provided Plaintiffs are given the distributions to which they are entitled, as promised by WULA, Plaintiffs will withdraw the <u>lis pendens</u> so that closing can proceed. (Declaration of A. Bernard Bays, Esq.).  Why, then, the need for an expedited hearing?  Plaintiffs believe WULA is merely trying to "lever" its position in settlement discussions with Plaintiffs or never intends to pay Plaintiffs anything in settlement.  This Court should note that despite all of WULA's representations that it will settle with Plaintiffs, <u>neither WULA nor its counsel have ever made an offer of any sort whatsoever, either orally or in writing, to settle this case in any amount.</u>  (Edmunds Declaration).

This Court should not be drawn into WULA's strategy to prejudice Plaintiffs in any settlement which WULA may propose to Plaintiffs.

11

II.    WULA'S MOTIONS TO DISMISS AND FOR EXPUNGEMENT OF LIS
       PENDENS ARE SUFFICIENTLY WEAK ON THEIR MERITS THAT
       THIS COURT SHOULD NOT SHORTEN THE TIME WITHIN WHICH
       TO HEAR THEM

       A.    The Hawaii and Washington Statutory Scheme for Insurance
             Company Rehabilitation and Liquidation.

             Both Hawaii and Washington have enacted the Uniform Insurers'

Liquidation Act ("UILA" or "Uniform Act") and, both through the provisions of

the UILA and other statutes,  extensively supervise the rehabilitation and

liquidation of insurers.  While many provisions of the two states' statutes are

identical, other sections differ in significant respects.

             The Uniform Act establishes a two-stage system for the

administration of troubled insurance companies by state regulators.  Generally, if a

state insurance commissioner determines that an insurer is insolvent, that its

continued operation would be harmful to the public, or that it meets other

statutorily-enumerated criteria (which may include voluntary submission by the

company to rehabilitation), the commissioner brings an action in state court

against the insurer seeking to place it into receivership.  If the order is granted, the

commissioner is given control over the company's operations and the company is

placed in rehabilitation.  If rehabilitation proves unsuccessful, the receiver seeks

an order to liquidate the business.  If such an order is granted, the company is put

12

into liquidation and the commissioner, as liquidator, is accorded additional powers appropriate to the liquidation and winding up of the company's affairs. As will be shown below, where WULA is in <u>rehabilitation</u>, not liquidation, nothing in the present posture of this case precludes this Court from continuing to assert jurisdiction here.

      B.      <u>WULA Is in Rehabilitation, Not Liquidation, and Important Consequences Result from That Distinction</u>.

The Order of Rehabilitation pursuant to which WULA acts is attached as Exhibit 1 to WULA's motion. It makes it clear that WULA is in the first, rehabilitation stage, providing, <u>inter alia</u>, that:

> 1.   Pursuant to Chapters 48.31 and 48.99 RCW, Insurance Commissioner Mike Kreidler, and his successor(s), is hereby appointed Statutory Receiver of Western United for purposes of rehabilitation ...

> 2.   ... The Receiver shall conduct the business of Western United, and shall take such steps toward removal of the causes and conditions which have made rehabilitation necessary as the Court may approve; and the Receiver shall administer the assets of Western United under the general supervision of the Court.

Order of Rehabilitation and Appointment of Receiver in <u>Mike Kreidler, Insurance Commissioner v. Western United Assurance Company</u>, No. 04-2-00406-1, March 2, 2004, Exhibit 1 to WULA's Motion.

Whether an insurer is in rehabilitation or in liquidation radically affects, among other things, how the claims of those in non-domiciliary states, <u>i.e.</u>

13

states other than that in which the insurer is domiciled and the regulatory proceeding is pending, are presented and resolved. Thus, Hawaii's Insurers Supervision, Rehabilitation and Liquidation Act, Chapter 431, Article 15, contains an integrated system governing the rehabilitation and liquidation of insurance companies, divided into separate sections containing provisions applicable to each procedure. For example, there are separate sections concerning the grounds for rehabilitation, 431:15-301, grounds for liquidation, 431:15-306; rehabilitation orders, 431:15-302, liquidation orders, 431:15-307; powers and duties of the rehabilitator, 431:15-303, powers of the liquidator, 431:15-310; actions by and against the rehabilitator, 431:15-304, actions by and against the liquidator, 431:15-313; termination of liquidation, 431:13-305, and termination of proceedings, 431:15-356. The terms "rehabilitation", "rehabilitator", "liquidation" and "liquidator" are used consistently with their statutorily-defined meanings. In addition, the terms "receiver" and "delinquency proceeding" are used generically for receiver, liquidator, rehabilitator or conservator, and proceeding for liquidation, rehabilitation, reorganization or conservation. HRS 431:15-103.

HRS 431:15-407 governs claims of Hawaii residents against non-domiciliary insurers *in liquidation*:

14

(a) In a liquidation proceeding in a reciprocal state[4] against an insurer domiciled in that state, claimants who reside within this State may file claims either with the ancillary receiver, if any, in this State, or with the domiciliary liquidator. ...

(b) Claims belonging to claimants residing in this State may be proved either in the domiciliary state under the law of that state, or in ancillary proceedings, if any, in this State. ...

No ancillary proceeding has been filed in Hawaii. If, then WULA were in liquidation, HRS 431:15-407 might require that claims of Hawaii residents against WULA and its Liquidator be submitted to WULA's receiver in Washington for resolution. But there is no statute parallel to HRS 431:15-407 governing claims of Hawaii residents against non-domiciliary insurers *in rehabilitation*. From this, it necessarily follows that such claimants, like Plaintiffs here, may bring those claims wherever otherwise proper – i.e., that insurance law does not restrict the bringing of the claim.

HRS 431:15-313 governing actions against a *liquidator* in a Hawaii court, provides as follows:

Upon issuance of an order appointing a liquidator of a domestic insurer or of an alien insurer domiciled in this State, no action at law or equity shall be brought against the insurer or liquidator, whether in this State or

---

[4] Plaintiffs accept, for the purposes of this argument, WULA's assertion that Hawaii and Washington are "reciprocal states".

elsewhere, nor shall any such existing actions be maintained or further presented after issuance of such order. ...

In contrast, the parallel section, HRS 431:15-304, governing actions against a *rehabilitator*, provides:

> (a) Any court in this State before which any action or proceeding in which the insurer is a party or is obligated to defend a party is pending when a rehabilitation order against the insurer is entered, shall stay the action or proceeding for ninety days and such additional time as is necessary for the rehabilitator to obtain proper representation and prepare for further proceedings. The rehabilitator shall take such action respecting the pending litigation as the rehabilitator deems necessary in the interests of justice and for the protection of creditors, policyholders and the public. ...

Thus, although "no action" may be maintained against a liquidator, a rehabilitator is entitled to nothing more than a stay of proceedings to enable him to obtain proper representation and prepare for further proceedings – time which has long passed here.

The order appointing Defendant as rehabilitator of WULA contained language explicitly citing and providing for the 90-day statutory stay of the Washington equivalent of this  section. See Order of Rehabilitation, WULA's Exhibit 1, at ¶ 6.

16

Here Plaintiffs' choice of forum for the resolution of their dispute with WULA was agreed to between the parties. The agreements between the parties specifically provide that the arbitration be conducted by DPR in Honolulu, Hawaii and be governed by Hawaii law.[5] In WULA's default in failing to proceed with that arbitration, any court of competent jurisdiction over such proceedings, such as a Hawaii state court or this Court sitting in diversity, is clearly proper and the jurisdiction of those courts is unaffected by the insurance-related aspects of this case.

Courts in other UILA jurisdictions have reached precisely this result. In Smalls v. Weed, 293 S.C. 364, 360 S.E.2d 531 (S.C. App. 1987), the defendant was the statutory rehabilitator of a Tennessee insurance company. The plaintiff insured was a South Carolina resident; South Carolina and Tennessee were reciprocal states under the UILA. The defendant moved to dismiss the plaintiff's South Carolina action, citing the South Carolina statute governing claims by in-state claimants against out-of-state insurers *in liquidation*. The South Carolina court refused to apply the rules governing liquidation cases to insurers in

---

[5] Development Agreement, Exhibit 2 to Plaintiffs' Motion to Compel Arbitration, 12/7/04 ("Motion") at 6; Management Agreement, Exhibit 8 to Motion, 8; MPF Agreement, Exhibit 5 to Motion, 5; Malani Agreement, Exhibit 7 to Motion, 5.

rehabilitation and cited the South Carolina equivalents of HRS 431:15-304 and -313 as follows:

> Thus, Section 38-5-2130 provides that, in contrast to the provision staying pending actions against a company which goes into rehabilitation, upon issuance of an order for a liquidation proceeding, neither pending nor new actions may be maintained.
>
> In the present case, Cherokee Insurance Company is in rehabilitation proceedings, not liquidation proceedings, for which Weed has been appointed rehabilitator. While "liquidation" contemplates the end of corporate existence, "rehabilitation" involves the continuance of corporate life and activities, and is an effort to restore and reinstate the corporation to its former condition of successful operation and solvency.
>
>          *          *          *
>
> It is apparent that the Act provides for one procedure in actions involving a rehabilitator, and for a different procedure against a liquidator. The Act, moreover, is divided into separate sections concerning grounds for rehabilitation (Section 38-5-2010), grounds for liquidation (Section 38-5- 2060), rehabilitation orders (Section 38-5-2020), liquidation orders (Section 38-5-2070), powers and duties of rehabilitator (Section 38-5-2030), and powers of liquidator (Section 38-5-2100).
>
>          *          *          *
>
> Construing the statute as a whole in an attempt to determine the legislative purpose in its enactment, we find the legislature clearly intended to provide, and has provided, separate procedures for actions against companies in rehabilitation and companies in

> liquidation.  Weed's assertion, therefore, that Smalls'
> actions are barred in South Carolina under provisions
> such as Section 38-5-2470, which concern actions
> against *liquidators,* is in error.

Smalls v. Weed at 360 S.E.2d at 534 [citations omitted, emphasis in original] For
the Court's convenience, a copy of the opinion in Smalls is attached hereto as
Exhibit E.

The same issue was presented in Hobbs v. Don Mealey Chevrolet,
Inc., 642 So.2d 1149 (Fla. App. 1994), an action by auto dealerships against an
insurance carrier in rehabilitation.  An earlier version of Florida's UILA had used
the generic term "delinquency proceeding", defined to include liquidation,
rehabilitation, reorganization and conservation, in that state's equivalent of HRS
431:15-313 "actions against" section.  The statute was subsequently amended to
restrict its applicability to liquidation proceedings.  When the insurer in Hobbs, in
rehabilitation, raised the amended statute as a bar to jurisdiction, the court wrote:

> Significantly, the 1983 amended statute substituted the
> term "liquidation proceeding" for the statute's former
> term of "delinquency proceeding."  Under the Act,
> delinquency proceedings include liquidation,
> rehabilitation, reorganization and conservation.  Thus, in
> amending the statute, the legislature narrowed the type of
> proceeding covered under section 631.171 to liquidation
> proceedings.
>
> [Citation, discussion of Smalls v. Weed omitted]
>
> Florida's Insurers Rehabilitation and Liquidation Act
> similarly distinguishes rehabilitation proceedings from

> liquidation proceedings. For example, the Act is divided into separate sections concerning grounds for rehabilitation (section 631.051), grounds for liquidation (section 631.061), rehabilitation orders (section 631.101), and liquidation orders (section 631.111). . . .
>
> Under the foregoing analysis, section 631.171 arguably would have divested the trial court of jurisdiction of Hobbs had been appointed for the purpose of liquidating AFSLIC; however, it is undisputed that Hobbs was appointed for the purpose of rehabilitating AFSLIX. The trial court, therefore, did not err in denying Hobbs' motion to dismiss under section 631.171 of the Insurers Rehabilitation and Liquidation Act.

Hobbs v. Don Mealey Chevrolet, Inc. at 1157-1159 [Citations and footnotes omitted].

See also State ex rel. Dykhouse v. Edwards, 908 S.W.2d 686 (Mo. 1995)("As in his prior argument, relator attempts to superimpose the rules governing liquidation proceedings upon a rehabilitation proceeding. ... Clearly, the legislature intended to differentiate between enjoining actions pending in rehabilitation proceedings and those pending in liquidation proceedings."); In re Allcity Insurance Company, 66 A.D.2d 531, 413 N.Y.S.2d 929 (App. Div. 1979).

    C.    <u>The Lis Pendens is Proper and Not Subject to Expungement.</u>

WULA cites HRS 431:15-408 in support of expunging Plaintiffs' <u>lis pendens</u>. That statute provides as follows:

> During the pendency in this or any other state of a <u>liquidation</u> proceeding, whether called by that name or

> not, no action or proceeding in the nature of an
> <u>attachment</u>, <u>garnishment</u> or <u>levy of execution</u> shall be
> commenced or maintained in this State against the
> delinquent insurer or its assets. (Emphasis added)

WULA argues that "there is no question that the <u>lis</u> <u>pendens</u> is "in the nature of an

attachment, garnishment, or levy of execution." WULA's memorandum at 9.

Plaintiffs believe that this substantially misstates Hawaii law, under which it is

well settled that a <u>lis</u> <u>pendens</u> is <u>notice</u> to the world of the existence of a pending

lawsuit in which the title to real property is called into question, <u>S. Utsunomiya</u>

<u>Enterprises, Inc. v. Moomuku Country Club</u>, 75 Haw 480, 866 P.2d 951 (1994),

<u>not</u> an "attachment, garnishment or levy of execution." WULA cites no authority

for its "no question" assertion. Attachment, garnishment and levy of execution are

extensively provided for by statute[6] and a <u>lis</u> <u>pendens</u> is not among or even similar

to them.

More significantly, this statute, like the others WULA relies on, has

effect only "during the pendency of a liquidation proceeding" in Hawaii or another

state. As pointed out above, WULA is in rehabilitation, not liquidation, and the

statute simply does not apply. Under the statute and so long as WULA remains in

rehabilitation, it is subject not only to the assertion of a <u>lis</u> <u>pendens</u> against its real

---

[6] Attachment, HRS 651-1 through 651-21; garnishment, HRS 652-1 through
652-15; levy of execution, HRS 651-31 through 651-134.

property in Hawaii, but to "attachment, garnishment or levy of execution" by any plaintiff properly entitled to those remedies.

The statute's use of the phrase "liquidation proceeding, *whether called by that name or not*," (cited at page 9 of WULA's Memorandum) does not change this conclusion. The purpose of this language is to preserve the effect of the statute as to those states which call their liquidators by some term other than "liquidator". Some states, like Washington, use the generic term "receiver" to denote both liquidators and rehabilitators, while others have unique names such as conservators or trustees. But there is no doubt that when a state, in its delinquency statutes, establishes a clear two-part system consisting of both rehabilitation and liquidation "paths", and appoints its insurance commissioner "Statutory Receiver of Western United for the purposes of rehabilitation," Order of Rehabilitation, Exhibit 1 to WULA's motion, pursuant to the Washington statute governing rehabilitation, not liquidation, that receiver is, in the language of the Hawaii statutes, a rehabilitator and not a liquidator, despite his "generic" title. Thus, a provision applicable solely to liquidators and not rehabilitators does not apply to him.

Mr. Metcalf is not engaged in "a liquidation proceeding, whether called by that name or not" – he is engaged in a *rehabilitation* proceeding, explicitly so called by the state courts, in which he is given the title Receiver.

III.    <u>CONCLUSION</u>.

For the foregoing reasons, WULA's <u>ex parte</u> motion for an order shortening time should be denied and its substantive motions should be set for hearing in the ordinary course of this Court's calendar.  When heard, however, those substantive motions should be denied, primarily because WULA has serious confused the law applicable to a liquidator with that applicable to a rehabilitator.

DATED:  Honolulu, Hawaii, February 21, 2006.

_____
JOHN S. EDMUNDS
RONALD J. VERGA

Co-Counsel for Plaintiffs