IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MOKULEIA PRESERVATION PARTNERS, L.L.C.; MALANI, INC. and MOKULEIA POLO FARMS, L.L.C.,<br><br>Plaintiffs,<br><br>vs.<br><br>WESTERN UNITED LIFE ASSURANCE COMPANY,<br><br>Defendant. | CIVIL NO. 04-00283 DAE/BMK<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT WESTERN UNITED LIFE ASSURANCE COMPANY'S MOTION TO DISMISS *IN REM* CLAIMS AND FOR EXPUNGEMENT OF NOTICE OF PENDENCY OF ACTION |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
WESTERN UNITED LIFE ASSURANCE COMPANY'S
MOTION TO DISMISS *IN REM* CLAIMS AND FOR
EXPUNGEMENT OF NOTICE OF PENDENCY OF ACTION

I.    INTRODUCTION SUMMARY

Defendant's Motions are an effort by a large Mainland insurance

company to keep all of the proceeds from the sale of the 2,500 acre Dillingham

Ranch Property on the North Shore of Oahu, which the Defendant contractually

promised to co-develop with Plaintiffs. Plaintiffs had worked on the project for

over six years and had the property under contract when they brought the property

to Western United Assurance Company's ("WULA's") predecessor, Metropolitan

Life Assurance Company ("METRO"), for co-development in mid 2002. WULA

succeeded to Metro's rights and responsibilities under its various contracts with Plaintiffs regarding the Property.

One year ago, WULA deliberately defaulted under each of its four contracts with the Plaintiffs regarding the property. Each of the contracts required arbitration by DPR in Honolulu, under Hawaii law and Plaintiffs demanded arbitration. WULA refused to arbitrate and Plaintiffs were forced to file this action to compel arbitration. WULA then induced Plaintiffs and the Court to "stand still," so WULA could sell the property for the best price obtainable and pay Plaintiffs the monies due them under their contracts. Now, on the eve of a sale (closing is set for May 20, 2006), WULA has reneged on its agreement to pay Plaintiffs the amounts owed. Instead, WULA has filed the instant Motion asking this Court to allow WULA to keep all the proceeds from the pending sale and "referring" any judgment Plaintiffs obtain in this Court to Washington state court, making Plaintiff a general creditor in the WULA rehabilitation proceeding. Neither applicable case law nor fairness supports WULA's position.

## II.    FACTUAL SUMMARY

This case involves approximately 2,500 acres of land at Mokuleia, Oahu ("Dillingham Ranch") in which Plaintiffs[1] have invested more than a decade

---

[1] The principals of the named Plaintiffs are A. Bernard Bays, Esq. and Michael Dailey.

of their time, money and resources.  In 2002, Plaintiffs' interest in Dillingham Ranch (which at that time was worth at least $12 million to $15 million) was the subject of a business arrangement involving Plaintiffs, Summit Property Development ("Summit") and Metropolitan Mortgage and Securities Co., Inc. ("Metro").  WULA later assumed all of Metro's rights, responsibilities and agreements with Plaintiffs concerning Dillingham Ranch.  See generally Declaration of A. Bernard Bays ("Bays Decl."), December 1, 2004, Exhibit A hereto, ¶¶ 4-10.[2]

WULA violated and is threatening to violate most of its obligations under its agreements with Plaintiffs, all of which touch on and concern the Dillingham Ranch.  Each document involved in this case is, by its terms, "governed by the laws of the State of Hawaii both as to interpretation and performance."  Bays Decl., ¶¶ 20, 24.

WULA agreed to develop the Dillingham Ranch in accordance with the general Project Concept provided by plaintiff MPP; and MPP and WULA agreed to a specific formula for the distribution of proceeds from the development and sale of the Ranch.  Id., ¶¶ 14-15.

---

[2] The Bays Declaration, which contains a detailed statement of the factual background of the case, was attached in support of Plaintiffs' Motion to Compel Arbitration, filed 12/7/04; a copy, without exhibits, is attached here for the Court's convenience.

Pursuant to an Amendment to the Development Agreement, WULA obtained the option to sell all or a portion of the Ranch, with the proceeds subject to distribution as set forth in Section 3 of the Development Agreement. Id., ¶ 18. However, to assure that Plaintiff MPP received a minimum level of compensation for its interest in the Ranch, plaintiff MPP, WULA and Metro agreed that any sale of the Ranch for a sum less than $25,000,000.00 would require MPP's prior written consent. Id., ¶ 19. WULA is threatening to violate this agreement.

Plaintiff Malani is entitled to a quarterly fee of $25,000.00 in advance for the period from August 1, 2002 through August 1, 2006. ¶¶ 21, 25. In return, Plaintiffs Malani and MPF agreed to assist in the planning, development and sale of the Dillingham Ranch. Id., ¶¶ 22, 26. Mokuleia Polo Farms LLC ("MPF") has an identical agreement. WULA has intentionally violated these agreements.

The amounts required to be paid to Malani, MPF and MPF under those agreements were part of the consideration for the transfer of the Dillingham Ranch to Metro/WULA. Therefore, the Consultant Agreements did not allow for termination before payment of all amounts due under the agreements, unless development was completed and the last lot sold. ¶ 28. Again, WULA is in violation.

Under the Management Agreement ("Mgt. Agreement") dated August 2002 (which is "governed by and construed in accordance with the laws of the State of Hawaii"), Plaintiff Dillingham Ranch Management, LLC ("DRM") is entitled to payments for services. WULA has deliberately breached this agreement by failing to make the required payments and interfering with Plaintiffs' ability to perform.

On February 4, 2004, WULA was placed under rehabilitation proceedings under the laws of Washington, despite being in good financial health with over $100,000,000.00 in net worth.[3] Id. at 7-8, ¶ 36. Thereafter, the Chief Deputy Receiver of WULA represented to Plaintiffs that WULA was financially sound and would honor its agreements with MPP, Malani and MPF. Id., ¶ 37.

On February 23, 2004, WULA's accounting representatives calculated the amount that would be owed to Plaintiffs if the land were sold, using the distribution formula in the Development Agreement as amended for $25M or less. WULA calculated that MPP would receive $6,150,948.00 if the Dillingham Ranch sold for $25,000,000.00, plus 50% of any sales proceeds in excess of $25

---

[3] WULA's parent, Metro, had filed for bankruptcy protection. Under these circumstances, it is common practice for a subsidiary insurance company like WULA to be placed in rehabilitation to assure that the subsidiary's assets are not drained "upward" by its debtor parent. Plaintiffs can see no other reason for WULA filing for rehabilitation.

million. Id., ¶ 40. Plaintiffs considered the amount too low, but agreed to accept it by letter dated February 23, 2004. Id., ¶ 41.

WULA has intentionally and materially breached nearly every promise it ever made to Plaintiffs. WULA has breached its agreement to proceed with the Project Concept. WULA breached the Malani Agreement and MPF Agreement by intentionally refusing to pay Malani and MPF the quarterly fees due and owing under the agreements. Id., ¶¶ 50-55; WULA breached the Mgt. Agreement by, among other things, refusing to pay for covered costs and terminating the Mgt. Agreement without the required notice. Id., ¶¶ 57-59.

As a result of WULA's and its Receiver's breaches, WULA put Plaintiffs' interest in Dillingham Ranch at risk. Plaintiffs were forced to demand arbitration (as called for in the agreements) and filed this lawsuit to compel arbitration.

Plaintiffs have incurred substantial damages through WULA's deliberate, dishonorable conduct. Had WULA proceeded with development of the land as mandated by the Development Agreement and as recommended by Plaintiffs, lots in the completed Project would have already been sold off in one of the hottest real estate markets in Hawaii history resulting in profits to the Plaintiffs of more than $40 million (at net present value).

## III.   PROCEDURAL SUMMARY

On December 7, 2004, Plaintiffs filed a motion in this Court to compel arbitration. WULA neither answered nor filed responsive motions, but persuaded Plaintiffs (and this Court) to accede to a lengthy series of stipulations, "standstill agreements" and conferences, the effect of which was to delay resolution of Plaintiffs' claims. WULA asserted that it was actively marketing the Property and needed additional time to obtain the highest price possible, and that it would pay Plaintiffs the share of the sales proceeds to which they were entitled pursuant to their written contracts with WULA. Based on these assurances, Plaintiffs agreed to the repeated delays and forbore returning to the "litigation track" in the case.

WULA's "standstill" stipulation with Plaintiffs of 12/4/2004 was extended five times: See Supplemental Stipulation and Order, 1/7/05; Second Supplemental Stipulation and Order, 1/13/05; Third Supplemental Stipulation and Order, 3/30/05; Fourth Supplemental Stipulation and Order, 4/5/05; Stipulation and Order, 6/13/05; and Second Stipulation and Order, 6/13/05.[4]

In addition to the originally-scheduled June 3, 2005 Rule 16 Conference, additional status conferences were held as follows:

----

[4] See Second Stipulation and Order, 6/13/05, ¶ 1, attached hereto as Exhibit B.

September 7, 2005 – status conference

August 10, 2005 – scheduling conference

October 12, 2005 – status conference

October 10, 2005 – status conference

November 16, 2005 – trial re-scheduling conference

January 12, 2006 – status conference

January 26, 2006 – status conference

February 7, 2006 – settlement conference

Declaration of John S. Edmunds, ¶ 2.

Counsel for each of the parties attended each of the listed
conferences, and in each case, one or more of Plaintiffs attended. Id. At each of
these conferences, WULA's counsel represented to the Court and opposing
counsel that WULA was actively marketing the property in question and wanted
more time within which to do so. Id. In reliance on those representations,
Plaintiffs and their counsel continued to agree to give WULA more time.

Throughout the many conferences held by Magistrate-Judge Kurren,
the theme was always the same: WULA wanted to market and sell the property
for the highest price possible and to pay Plaintiffs the distributions to which they
were entitled pursuant to their written contracts with WULA. Such

representations were made to Plaintiffs and Magistrate-Judge Kurren repeatedly. <u>Id</u>.

Now, having obtained the needed time delay from Plaintiffs, WULA seeks to renege on its agreement to make a fair distribution of the proceeds of what it represents is an impending sale, and instead seeks to invoke the exclusive jurisdiction of the Washington insurance rehabilitation proceeding to defeat Plaintiff's interest in the Property and any proceeds of its sale. Significantly, <u>Defendant has never yet made any formal written offer to pay Plaintiffs any portion of the sales proceeds</u>. <u>Id</u>. WULA's delays and misrepresentations, to Plaintiffs and to the Court, have prevented Plaintiffs from obtaining the prompt resolution of their claims by this Court and through the arbitration to which their agreements entitle them. WULA should be estopped by its conduct in this proceeding from now raising a jurisdictional challenge. As will be shown below, that challenge as well as WULA's subject matter jurisdiction challenge is without merit.

IV.    <u>ARGUMENT</u>

    A.    <u>Where the Parties Have Agreed to Submit Their Disputes to Arbitration, Controlling Ninth Circuit Precedent Holds that It Is the Forum Court which Determines Whether a Sister-State Receiver Has an Interest in Property Sufficient to Support <em>In Rem</em> Jurisdiction</u>.

Plaintiffs seek to compel Defendant to arbitrate the dispute between the parties pursuant to the parties' agreements. <u>See</u> Plaintiffs' Motion to Compel Arbitration and Memorandum in Support, December 7, 2004. Well-settled Ninth Circuit law holds that when an insurer undergoing court-supervised rehabilitation or liquidation seeks to escape its commitment to arbitrate disputes on the basis that the court in which the insurance proceeding is pending has taken exclusive jurisdiction over the *res* in issue, the <u>forum</u> court <u>may</u> properly review the basis for that claimed jurisdiction. <u>Bennett v. Liberty National Fire Insurance Company,</u> 968 F.2d 969 (9th Cir. 1992)[5]; <u>Quackenbush v. Allstate Insurance Co.,</u> 121 F.3d 1372 (9th Cir. 1997)[6].

In <u>Bennett, supra,</u> the liquidator of an insolvent insurer sued companies with which the insurer had a reinsurance contract. Defendants removed the action to federal court, which concluded that abstention was appropriate under the <u>Colorado River</u> and <u>Burford</u> doctrines. However, the Ninth Circuit reversed, holding that (1) the liquidator was bound by the insurer's pre-insolvency agreements to arbitrate all disputes arising out of its contractual

---

[5] For the court's convenience, copies of significant cases and statutory material are attached in an appendix. A copy of <u>Bennett</u> is attached as Appendix 1.

[6] Copy attached as Appendix 2 hereto.

relationships and (2) where the insurer's ownership interest in the property at issue depended on the result of the arbitration proceeding, the forum court should order that arbitration to proceed. Only if the arbitrator determined that the property in dispute in fact belonged to the insurer did the liquidator succeed to it by order of the liquidation court and did it become subject to that court's jurisdiction in the liquidation proceeding:

> The appellants contend that the parties intended their arbitration clauses to encompass a liquidation dispute over asset ownership. ... The Federal Arbitration Act (FAA) has established a federal policy favoring arbitration and the courts are required to "rigorously enforce agreements to arbitrate." [Citations omitted] Further, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration" with "any doubts concerning the scope of arbitrable issues ... resolved in favor of arbitration." [Citation omitted].
>
>      \*     \*     \*
>
> These arbitration clauses focus on contract interpretation and performance. Arbitration should have been ordered if the liquidator sought to enforce Glacier's contractual rights. The parties' underlying dispute over ownership of assets cannot be resolved without examining and interpreting the contract. Because this dispute is in essence a contractual one, it should be arbitrated. <u>And because the liquidator, who stands in the shoes of the insolvent insurer, is attempting to enforce Glacier's contractual rights, she is bound by Glacier's pre-insolvency agreements.</u>
>
>      \*     \*     \*

> <u>We reach this conclusion even though we recognize that</u>
> <u>Montana has conferred on the liquidator broad</u>
> <u>jurisdiction over insurance insolvency proceedings and</u>
> <u>complete control and authority over the insolvent's</u>
> <u>assets</u>. Until the contractual dispute regarding ownership
> of the assets is resolved, however, the authority the
> Montana insolvency statutes grants the liquidator does
> not vest. <u>Only if a court or arbitrator determines that the</u>
> <u>funds belong to Glacier does that money become part of</u>
> <u>the estate that the liquidator will distribute</u>.

968 F.2d at 971, 972 [citations omitted, emphasis added].

The holding of <u>Bennett</u> was affirmed in <u>Quackenbush</u>, <u>supra</u>, with the

Ninth Circuit rejecting public policy and McCarran-Ferguson claims, and holding

that the <u>Bennett</u> doctrine survived the later case of <u>United States Department of</u>

<u>Treasury v. Fabe</u>, 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993). <u>See</u>

<u>Quackenbush</u>, <u>supra</u>, at 121 F.3d 1380-1382. As the Ninth Circuit wrote in

<u>Quackenbush</u>, "This claim, while it may indirectly relate to the California

Insurance Code, involves *contractual* rights, not rights created by statute."

[Emphasis in original] Here, as in <u>Bennett</u> and <u>Quackenbush</u>, the parties have a

pre-rehabilitation contractual dispute unrelated to the business of insurance but for

the fact that Defendant is an insurer. Long before the reorganization proceeding,

the parties agreed to resolve their disputes through arbitration. Only if an

arbitrator (or this Court) determines that the subject property belongs to WULA

does that property become part of the estate to which Defendant Metcalf succeeds

by order of the Washington court.  Until that determination is made, it is

impossible to evaluate Defendant's claim to ownership of a *res* in this jurisdiction

to the exclusion of Plaintiffs.  <u>Bennett</u>, <u>supra</u>.

  B. <u>Defendant, the Washington Receiver of an Insurer in Rehabilitation,
Was Entitled To a 90-Day Stay of Proceedings in this Matter, not to
the Status and Rights of a Liquidator as He Argues.</u>

    1. <u>The Hawaii and Washington Statutory Schemes for Insurance
Company Rehabilitation and Liquidation</u>.

  Both Hawaii and Washington have enacted the Uniform Insurers'

Liquidation Act ("UILA" or "Uniform Act") and, both through the provisions of

the UILA and other statutes,  extensively supervise the rehabilitation and

liquidation of insurers.[7]  While many provisions of the two states' statutes are

identical, other sections differ in significant respects.

  The Uniform Act establishes a two-stage system for the

administration of troubled insurance companies by state regulators.  Generally, if a

state insurance commissioner determines that an insurer is insolvent, that its

continued operation would be harmful to the public, or that it meets other

statutorily-enumerated criteria (which may include voluntary submission by the

---

  [7] Particularly significant are Chapter 41.31 RCW, "Mergers, Rehabilitation,
Liquidation, Supervision", attached as Appendix 3 and Chapter 48.99 RCW, the
Washington version of the Uniform Insurers Liquidation Act, attached as
Appendix 4.

company to rehabilitation), the commissioner brings an action in state court against the insurer seeking to place it into receivership. If the order is granted, the commissioner is given control over the company's operations and the company is placed in rehabilitation. If rehabilitation proves unsuccessful, the receiver may seek an order to liquidate the business. If such an order is granted, the company is put into liquidation and the commissioner, as liquidator, is accorded additional powers appropriate to the liquidation and winding up of the company's affairs. In this case, WULA was a <u>solvent</u> company which voluntarily sought receivership because of the bankruptcy of its parent. It is in <u>rehabilitation</u>, not liquidation, and, as will be shown below, nothing in the present posture of this case precludes this Court from continuing to assert jurisdiction here.

  2. <u>WULA Is in Rehabilitation, Not Liquidation, and Important Consequences Result from That Distinction</u>.

  The Order of Rehabilitation pursuant to which WULA acts is attached as Exhibit 1 to WULA's motion.[8] It makes it clear that WULA is in rehabilitation, not liquidation, providing, <u>inter alia</u>, that:

> 1. Pursuant to Chapters 48.31 and 48.99 RCW, Insurance Commissioner Mike Kreidler, and his successor(s), is hereby appointed Statutory Receiver of Western United for purposes of rehabilitation ...

---

  [8] An additional copy is attached as Exhibit C hereto for the Court's convenience.

2.   ... The Receiver shall conduct the business of Western United, and shall take such steps toward removal of the causes and conditions which have made rehabilitation necessary as the Court may approve; and the Receiver shall administer the assets of Western United under the general supervision of the Court.

Order of Rehabilitation and Appointment of Receiver in <u>Mike Kreidler, Insurance Commissioner v. Western United Assurance Company</u>, No. 04-2-00406-1, March 2, 2004, Exhibit 1 to WULA's Motion and Exhibit C hereto.

Whether an insurer is in rehabilitation or in liquidation radically affects, among other things, how the claims of those in non-domiciliary states, <u>i.e.</u> states other than that in which the insurer is domiciled and the regulatory proceeding is pending, are presented and resolved.  Thus, Hawaii's Insurers Supervision, Rehabilitation and Liquidation Act, Chapter 431, Article 15, contains an integrated system governing the rehabilitation and liquidation of insurance companies, divided into separate sections containing provisions applicable to each procedure.  For example, there are separate sections concerning the grounds for rehabilitation, 431:15-301, grounds for liquidation, 431:15-306; rehabilitation orders, 431:15-302, liquidation orders, 431:15-307; powers and duties of the rehabilitator, 431:15-303, powers of the liquidator, 431:15-310; actions by and against the rehabilitator, 431:15-304, actions by and against the liquidator, 431:15-313; termination of liquidation, 431:13-305, and termination of proceedings, 431:15-356.  The terms "rehabilitation", "rehabilitator", "liquidation"

and "liquidator" are used consistently with their statutorily-defined meanings. In addition, the terms "receiver" and "delinquency proceeding" are used generically for receiver, liquidator, rehabilitator or conservator, and proceeding for liquidation, rehabilitation, reorganization or conservation. HRS 431:15-103.

HRS 431:15-407 governs claims of Hawaii residents against non-domiciliary insurers *in liquidation*:

> (a) In a liquidation proceeding in a reciprocal state[9] against an insurer domiciled in that state, claimants who reside within this State may file claims either with the ancillary receiver, if any, in this State, or with the domiciliary liquidator. ...

> (b) Claims belonging to claimants residing in this State may be proved either in the domiciliary state under the law of that state, or in ancillary proceedings, if any, in this State. ...

No ancillary proceeding has been filed in Hawaii. If WULA were in liquidation, HRS 431:15-407 might require that claims of Hawaii residents against WULA and its Liquidator be submitted to WULA's receiver in Washington for resolution. But there is no statute parallel to HRS 431:15-407 governing claims of Hawaii residents against non-domiciliary insurers *in rehabilitation*. Thus it necessarily follows that such claimants, like Plaintiffs here, may bring those

---

[9] Plaintiffs accept, for the purposes of this argument, WULA's assertion that Hawaii and Washington are "reciprocal states".

claims wherever otherwise proper – i.e., that insurance law does not restrict the

bringing of the claim.

HRS 431:15-313 governing actions against a *liquidator* in a Hawaii

court, provides as follows:

> Upon issuance of an order appointing a liquidator of a
> domestic insurer or of an alien insurer domiciled in this
> State, no action at law or equity shall be brought against
> the insurer or liquidator, whether in this State or
> elsewhere, nor shall any such existing actions be
> maintained or further presented after issuance of such
> order. ...

In contrast, the parallel section, HRS 431:15-304, governing actions

against a *rehabilitator*, provides:

> (a) Any court in this State before which any action or
> proceeding in which the insurer is a party or is obligated
> to defend a party is pending when a rehabilitation order
> against the insurer is entered, shall stay the action or
> proceeding for ninety days and such additional time as is
> necessary for the rehabilitator to obtain proper
> representation and prepare for further proceedings.  The
> rehabilitator shall take such action respecting the
> pending litigation as the rehabilitator deems necessary in
> the interests of justice and for the protection of creditors,
> policyholders and the public. ...

Thus, although "no action" may be maintained against a liquidator, a

*rehabilitator* is entitled to nothing more than a stay of proceedings to enable him

to obtain proper representation and prepare for further proceedings – time which has long passed here.

The order appointing Defendant as rehabilitator of WULA contained language explicitly citing and providing for the 90-day statutory stay of the Washington equivalent of this section. See Order of Rehabilitation, WULA's Exhibit 1, at ¶ 6.

Here, the parties mutually agreed to arbitrate any of their disputes in this forum. Each of their agreements expressly stated that the arbitration be conducted by DPR in Honolulu, Hawaii and be governed by Hawaii law.[10] When WULA then defaulted by failing to proceed with that arbitration, those agreements gave this Court, sitting in diversity, jurisdiction. And such contractually agreed to jurisdiction is clearly unaffected by the insurance-related aspects of this case.

Courts in other UILA jurisdictions have reached precisely this result. In Smalls v. Weed, 293 S.C. 364, 360 S.E.2d 531 (S.C. App. 1987)[11], the defendant was the statutory rehabilitator of a Tennessee insurance company. The

---

[10] Development Agreement, Exhibit 2 to Plaintiffs' Motion to Compel Arbitration, 12/7/04 ("Motion") at 4-5; Management Agreement, Exhibit 8 to Motion, 7; MPF Agreement, Exhibit 5 to Motion, 4; Malani Agreement, Exhibit 7 to Motion, 4. These agreements are attached and designated collectively as Exhibit C.

[11] Copy attached as Appendix 5 hereto.

plaintiff insured was a South Carolina resident; South Carolina and Tennessee were reciprocal states under the UILA. The defendant moved to dismiss the South Carolina action, citing the South Carolina statute governing claims by in-state claimants against out-of-state insurers *in liquidation*. The South Carolina court refused to apply the rules governing liquidation cases to insurers in rehabilitation, citing the South Carolina equivalents of HRS 431:15-304 and 313:

> Thus, Section 38-5-2130 provides that, in contrast to the provision staying pending actions against a company which goes into rehabilitation, upon issuance of an order for a liquidation proceeding, neither pending nor new actions may be maintained.
>
> In the present case, Cherokee Insurance Company is in rehabilitation proceedings, not liquidation proceedings, for which Weed has been appointed rehabilitator. While "liquidation" contemplates the end of corporate existence, "rehabilitation" involves the continuance of corporate life and activities, and is an effort to restore and reinstate the corporation to its former condition of successful operation and solvency.
>
> *        *        *
>
> It is apparent that the Act provides for one procedure in actions involving a rehabilitator, and for a different procedure against a liquidator. The Act, moreover, is divided into separate sections concerning grounds for rehabilitation (Section 38-5-2010), grounds for liquidation (Section 38-5- 2060), rehabilitation orders (Section 38-5-2020), liquidation orders (Section 38-5-2070), powers and duties of rehabilitator (Section 38-5-2030), and powers of liquidator (Section 38-5-2100).

\*     \*     \*

> Construing the statute as a whole in an attempt to
> determine the legislative purpose in its enactment, we
> find the legislature clearly intended to provide, and has
> provided, separate procedures for actions against
> companies in rehabilitation and companies in
> liquidation.  Weed's assertion, therefore, that Smalls'
> actions are barred in South Carolina under provisions
> such as Section 38-5-2470, which concern actions
> against *liquidators,* is in error.

Smalls v. Weed at 360 S.E.2d at 534 [citations omitted, emphasis in original].

The same issue was presented in Hobbs v. Don Mealey Chevrolet, Inc., 642 So.2d 1149 (Fla. App. 1994), an action by auto dealerships against an insurance carrier in rehabilitation.  An earlier version of Florida's UILA had used the generic term "delinquency proceeding", defined to include liquidation, rehabilitation, reorganization and conservation, in that state's equivalent of HRS 431:15-313 "actions against" section.  The statute was subsequently amended to restrict its applicability to liquidation proceedings.  When the insurer in Hobbs, in rehabilitation, raised the amended statute as a bar to jurisdiction, the court wrote:

> Significantly, the 1983 amended statute substituted the
> term "liquidation proceeding" for the statute's former
> term of "delinquency proceeding."  Under the Act,
> delinquency proceedings include liquidation,
> rehabilitation, reorganization and conservation.  Thus, in
> amending the statute, the legislature narrowed the type of
> proceeding covered under section 631.171 to liquidation
> proceedings.

[Citation, discussion of <u>Smalls v. Weed</u> omitted]

Florida's Insurers Rehabilitation and Liquidation Act similarly distinguishes rehabilitation proceedings from liquidation proceedings. For example, the Act is divided into separate sections concerning grounds for rehabilitation (section 631.051), grounds for liquidation (section 631.061), rehabilitation orders (section 631.101), and liquidation orders (section 631.111). . . .

Under the foregoing analysis, section 631.171 arguably would have divested the trial court of jurisdiction of Hobbs had been appointed for the purpose of liquidating AFSLIC; however, <u>it is undisputed that Hobbs was appointed for the purpose of rehabilitating AFSLIX. The trial court, therefore, did not err in denying Hobbs' motion to dismiss under section 631.171 of the Insurers Rehabilitation and Liquidation Act.</u>

<u>Hobbs v. Don Mealey Chevrolet, Inc.</u> at 1157-1159 [Citations and footnotes omitted, emphasis added].

<u>See</u> <u>also</u> <u>State ex rel. Dykhouse v. Edwards</u>, 908 S.W.2d 686 (Mo. 1995)

("[R]elator attempts to superimpose the rules governing liquidation proceedings upon a rehabilitation proceeding. ... Clearly, the legislature intended to differentiate between enjoining actions pending in rehabilitation proceedings and those pending in liquidation proceedings."); <u>In re Allcity Insurance Company</u>, 66 A.D.2d 531, 413 N.Y.S.2d 929 (App. Div. 1979).

Defendant is entitled to no more than the procedure provided by statute for rehabilitators – a stay of the action for ninety days "for the rehabilitator

to obtain property representation and prepare for further proceedings." Defendant

Metcalf has obtained counsel and is obviously engaged in those "further

proceedings". He is entitled to nothing further under any law here.

C.    The Washington Order of Rehabilitation Is Not Entitled to Full Faith and Credit.

1.    The Issue of the Washington Court's Jurisdiction over the Property Was Not Fully and Fairly Litigated and Finally Decided in That Court, Where Plaintiffs Were Not Parties; That Court Thus Lacked Jurisdiction to Issue an Order Restraining Plaintiffs from Litigating Their Claims in this Forum.

It is, of course, well-settled law that the judgment of a sister-state

court is entitled to full faith and credit, even as to questions of that court's own

jurisdiction. Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963).

Full faith and credit need be accorded, however, only if the question of the first

court's jurisdiction "has been fully and fairly litigated and finally decided" in that

court. Durfee at 375 U.S. 111.

Here Defendant rests its entire claim to an interest in the subject

property (and resulting *in rem* jurisdiction) on the order of the Thurston County,

Washington Superior Court appointing him receiver of Western United Life

Assurance Company which is Exhibit 1 to Defendant's motion. That order, even

if, *arguendo*, sufficient to constitute a "judgment", on even cursory examination

reveals itself to be nothing more than a *pro forma* order directing the receiver to

take custody of all of WULA's assets, wherever located.  It is clear on its face that there was no express ruling on the jurisdictional issue by the Washington court, and no full and fair opportunity for Plaintiffs to litigate the question of the Washington court's jurisdiction over the property.  Plaintiffs were not parties to the Washington proceeding at the time of the order and were not before the Washington court.  Declaration of A. Bernard Bays, April 10, 2006, ¶ 5. Neither a sister-state court nor this Court is required to give full faith and credit to this assumption of jurisdiction by a Washington court, but may independently examine the basis for jurisdiction over the *res*.  Durfee v. Duke, supra.  This is particularly true here, where, *prima facie*, *in rem* jurisdiction over the *res* exists because of its nature as real property located in this state, subject to contracts specifically providing for jurisdiction in the state of Hawaii.  Plaintiffs cannot, consistent with due process, be deprived of an opportunity to challenge the Receiver's jurisdiction over the property.

In Tennessee v. Surety Bank, 200 F.3d 373 (5th Cir. 2000)[12], the Tennessee liquidator of an insolvent insurance company moved to intervene in a lawsuit pending in Texas state court, claiming that funds in an account in a Texas bank, at issue in the Texas lawsuit, were the property of the insurer, and that the

---

[12]  Copy attached as Appendix 6 hereto.

Texas liquidation court's order had vested him with ownership of the insurer's assets. The Fifth Circuit affirmed the District Court's refusal to grant full faith and credit to the Tennessee court's ruling permitting the liquidator's seizure of the funds located in Texas:

> A state court judgment is "entitled to full faith and credit – even as to questions of jurisdiction – when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the judgment." *Durfee v. Duke*, 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). Similarly, where a party has had an opportunity to litigate the question of jurisdiction but fails to do so, the second court must give full faith and credit to the first court's determination of jurisdiction.
>
> In each of these cases, however, either the party challenging the jurisdiction of the state court was actually involved in the original state court litigation or the previous parties had fully litigated the question of jurisdiction. Surety Bank, in contrast, was a party to neither of the Tennessee proceedings. Moreover, the parties to the Tennessee proceedings never litigated the issue of jurisdiction. To bind Surety Bank to such a judgment would contravene both the general rule that a person cannot be bound by a judgment in litigation to which he is not made a party or in which he is not served with process, and the rule that a court cannot command a person to become an intervener in a suit in which the person is neither a party nor is served. The constitutional command of full faith and credit does not compel Texas courts to defer to a Tennessee court's exercise of jurisdiction where the issue was neither fully and fairly litigated nor involved the same parties as the Texas litigation.

200 F.3d at 381 [Citations omitted, emphasis added].

Similarly, in <u>Robbins v. Reliance Insurance Company</u>, 102 S.W.2d

739 (Tex. App. 2001), a case cited with approval by the Ninth Circuit in

<u>Hawthorne Savings v. Reliance Insurance</u>, 421 F.3d 835, 850 n. 17 (Ninth Cir.

2005), amended 433 F.3d 1089 (2006), the Texas court, in ruling that full faith and

credit was not owed to the order of a Pennsylvania court enjoining proceedings

against the insurer outside of Pennsylvania, wrote:

> The order does not show on its face that the
> Pennsylvania court made a determination of its
> jurisdiction, and the question of whether it had
> jurisdiction was not fully and fairly litigated so as to
> require the application of full faith and credit.  Had there
> been a jurisdiction hearing, the order should have recited
> that the Commonwealth Court did not have jurisdiction
> over appellant or any court outside of Pennsylvania.  The
> Pennsylvania court did not have a judicatory authority
> over the subject matter or the appellant who was not a
> resident of Pennsylvania and was not a party to the
> Pennsylvania rehabilitation proceedings.

102 S.W.3d at 744-745.

In <u>Underwriters National Assurance Company v. North Carolina Life</u>

<u>and Accident and Health Insurance Guaranty Association</u>, 455 U.S. 691, 102 S.Ct.

1357, 71 L.Ed.2d 558 (1982) and <u>Morgan Stanley Mortgage Capital, Inc. v.</u>

<u>Insurance Commissioner of the State of California</u>, 18 F.3d 790 (9th Cir. 1994),

both insurance insolvency cases, the doctrine that it is open to a second court to

inquire into whether the issue of jurisdiction had been fully and fairly litigated and actually decided in the first proceeding before according full faith and credit to the judgment in that first proceeding was followed.  In each case, it was determined that the insurance proceeding had in fact provided such an opportunity; in Morgan Stanley, there had been an explicit ruling by the first court that it had jurisdiction. As a result, the courts in Underwriters National and Morgan Stanley both held full faith and credit appropriate under the circumstances presented in those cases.

Here, where the question of jurisdiction was never litigated in the Washington court, and where that court entered no more than a "boilerplate" order, apparently identical to that regularly entered in every proceeding, directing the receiver to "forthwith take possession of all the assets ... and all of the property, real and personal" of WULA, no rule requires that this Court accord full faith and credit to that recitation, or to the conclusion that *in rem* jurisdiction exists.  Rather, this Court, pursuant to ordinary principles of law, including the location of real property within the jurisdiction and contracts specifically providing for jurisdiction in this Court, may make its own determination regarding *in rem* jurisdiction.

2.    <u>The Washington Court Lacked Jurisdiction to Issue an Order Directing the Receiver to Take Possession of the Property in Hawaii.</u>

As discussed above, the Washington court lacked personal jurisdiction over Plaintiffs, and thus could not, consistent with due process, enter an order affecting Plaintiffs' rights in the Property or enjoining Plaintiffs from suits in other jurisdictions. Defendant argues that the court had constructive jurisdiction over the Property. An examination of the Washington insurance statutes and the Washington court's order demonstrates that that court acted in excess of its jurisdiction, rendering its order, as applied to the property in Hawaii, void.

As discussed in section B above, the state of Washington extensively regulates the rehabilitation and liquidation of troubled insurers and the coordination of its activities with similar activities of insurance regulators in other states. Those statutes, like their Hawaii parallels in Chapter 431, H.R.S., limit the orders which a court may enter in what the Washington statutes term "delinquency proceedings". Also as discussed above, WULA is currently undergoing *rehabilitation*, not *liquidation* – terms which are precisely defined in the statutes.

48.31.131 provides that when a *liquidator* is appointed:

*An action at law or equity or in arbitration may not be brought* against the insurer or liquidator, whether in this

state or elsewhere, nor may such an existing action be maintained or further presented after issuance of the order.

By contrast, 48.31.040, governing rehabilitation orders, provides only that:

An order to rehabilitate the business of a domestic insurer, or an alien insurer domiciled in this state, shall appoint the commissioner and his or her successors in office as the rehabilitator, and *shall direct the rehabilitator to immediately take possession of the assets of the insurer, and to administer them under the general supervision of the court.*

Separate, then, from any consideration of the <u>validity</u> of an anti-suit injunction purportedly restraining a non-party from bringing a lawsuit in another jurisdiction, the Washington insurance statutes clearly authorize the issuance of an anti-suit injunction only in a *liquidation* proceeding, not a *rehabilitation* proceeding.

The amended order in this rehabilitation proceeding, Exhibit 1 to Defendant's motion, provides, *inter alia* that:

12. Pursuant to Chapters 48.31 and 48.99 RCW, absent further order of this court or the express written consent of the receiver, <u>all persons are enjoined and restrained from:</u>

<u>a. Instituting or further prosecuting any action, at law or in equity, or in other proceedings to determine, enforce,</u>

collect, or assert any claims against Western United, its
assets, or the receiver;

The order of the Washington court, then, is in excess of its statutory

jurisdiction, since anti-suit injunctions, if permitted at all, are permitted only in

*liquidation* proceedings, not *rehabilitation* proceedings like this one. Because

Washington delinquency proceedings may be conducted only in compliance with

Chapter 48 RCW, 48.31.111 RCW, the order of the Washington court, to the

extent it purports to restrain Plaintiffs or this litigation, was rendered without

jurisdiction, and is not owed full faith and credit by this court.

> 3.    This Court's Determination of the Extent of WULA's Interest,
> If Any, in the Property Is a Precondition to the Existence of the
> Jurisdiction of the Washington Court.

As discussed above, a proper order of rehabilitation under section

48.31.040 RCW could award "possession of the assets of the insurer" to the

receiver and direct him to administer the insurer's business under the supervision

of the court. 48.31.040(4) RCW. As pointed out in Bennett v. Liberty National

Fire Insurance Company, supra, this procedure is not self-effectuating; it requires

a determination of just what the "assets of the insurer" are. In Bennett the Ninth

Circuit ruled that where the extent of the insurer's ownership interest was to be

determined in an arbitration between the insurer and a third party, the occurrence

of that arbitration and a determination of the insurer's interest must occur *before* it

could be determined whether, and to what extent, the insurer possessed an

ownership interest, and the jurisdiction of the liquidation court attached. The

identical situation obtains here, and arbitration between the parties must *precede*

any determination of Defendant's interest in, and thus the Washington court's *in*

*rem* jurisdiction, if any, over the Property.

In <u>Bryant v. United Shortline Inc. Assurance Services, N.A.</u>, 972

S.W.2d 26 (Tex. 1998)[13], a Tennessee insurance liquidator sought recognition for

a Tennessee order awarding him possession of all the insurer's assets and

prohibiting other litigation. In refusing to accord full faith and credit to the

Tennessee order, the Texas Supreme Court wrote:

> [The liquidation] order also empowered the liquidator to
> take possession of all Anchorage assets wherever
> located.
>
> \*       \*       \*
>
> We need not decide in this case whether TIRLA
> authorizes the Tennessee chancery court to order the
> liquidator to marshal Anchorage assets located outside of
> Tennessee. In this case, there has been no adjudication,
> in Texas or in Tennessee, that the funds at issue *belong*
> *to Anchorage*. The liquidation order incorporates the
> conservation order, which by its terms applies to
> *Anchorage's property*. Thus, even if we assume that the
> Tennessee court had jurisdiction over Anchorage assets
> located in other states, we are still left with the fact that

---

[13] Copy attached as Appendix 7 hereto.

we do not yet know if the funds at issue are even Anchorage assets.

None of the parties contest the court of appeals' conclusion that the bank's interpleader action is *quas in rem*. The funds were located in Texas and the bank tendered them into the Texas trial court's registry when it filed the interpleader. This gave the trial court jurisdiction over the funds to disburse them upon determining ownership.

\*  \*  \*

Thus, there is no "full faith and credit" to be given. <u>The assets at issue were located in Texas and their ownership was unclear.</u> <u>The fact that the liquidator has appeared in Texas to make a claim against the interpleader assets does not make them Anchorage's assets; indeed, that is precisely the issue to be determined in the interpleader action.</u> <u>Unless and until such a determination is made, the Tennessee order does not apply.</u> Under these circumstances, the trial court properly refused to dismiss or stay the lawsuit.

972 S.W.2d at 28, 29, 30 [Citations and footnotes omitted; emphasis denoted by italics in original, emphasis denoted by underscore added].

<u>Bryant</u> was cited with approval in <u>Tennessee v. Surety Bank</u>, <u>supra</u>, where the court wrote "[<u>Bryant</u>] explained that because the Tennessee court order, by its express terms, apply only to funds belonging to Anchorage, it had no effect on the Texas action, which was designed to address the antecedent question of whether the funds at issue actually belonged to Anchorage, rather than to another party." <u>Id</u>. at 377.

Thus to assert, as Defendant does, that "[i]t is indisputable that the Washington Court asserted *in rem* jurisdiction over the Dillingham Ranch property before the instant Complaint was filed," Defendant's memorandum at 6, is incorrect and begs the question. The Washington court, assuming *arguendo* it had jurisdiction to affect property in Hawaii, asserted jurisdiction over "the assets … of Western United," Amended Order, Exhibit 1 to Defendant's memorandum, ¶ 2. It is the arbitration mechanism, agreed to by the parties, which will determine whether the Property, or some interest in it, is in fact among "the assets … of Western United" to which the Receiver succeeded and over which the Washington court had jurisdiction.

D.   This Court Has *In Personam* Jurisdiction Over Defendant's Chief Deputy Receiver and May Order Him to Take Action with Respect to the Property.

This Court has clear personal jurisdiction over WULA. WULA entered into contracts in Hawaii: contracts concerning real property located in Hawaii, to be performed in Hawaii, and containing provisions specifically consenting to jurisdiction in Hawaii. WULA has not, and could not, raise the defense of lack of personal jurisdiction. Further, its failure to raise that defense in this motion waives the defense. F.R.C.P. 12(h)(1); 12(g); 5A Wright & Miller,

Federal Practice and Procedure § 1391. See, e.g., id., § 1396; United States v. Balanovski, 236 F.2d 298, 302 (2nd Cir. 1956).

In personam jurisdiction over Defendant's Chief Deputy Receiver will support an order of this Court directing him to take appropriate steps to preserve the res in Hawaii pending this Court's determination of the parties' rights. Thus this Court may impress an equitable lien upon the Property, one of the remedies sought in Plaintiffs' Complaint, impose a constructive trust, or order restitution. See, e.g., Small v. Badenhop, 67 Haw. 626, 701 P.2d 647 (1985)[14] (partner in purchase of property defrauds co-partner to obtain sole title; equitable lien an appropriate remedy); Peine v. Murphy, 46 Haw. 233, 377 P.2d 708 (1962)[15] (constructive trust imposed). Alternatively, the Court, with clear in rem jurisdiction over the Property and in personam jurisdiction over Defendant, could direct that, as a condition for the sale of the Property (which Defendant states it wishes to make), Defendant deposit the proceeds of a sale into the registry of the Court.

---

[14] Copy attached as Appendix 8 hereto.

[15] Copy attached as Appendix 9 hereto.

Having waived the defense of lack of personal jurisdiction,

Defendant's Chief Deputy Receiver is subject to the order of this Court, which

may properly require that he do substantial justice here.

E.     The *Lis Pendens* Is Proper and not Subject to Expungement.

WULA cites HRS 431:15-408 in support of expunging Plaintiffs' *lis*

*pendens*. That statute provides as follows:

> During the pendency in this or any other state of a
> <u>liquidation</u> proceeding, whether called by that name or
> not, no action or proceeding in the nature of an
> <u>attachment</u>, <u>garnishment</u> or <u>levy of execution</u> shall be
> commenced or maintained in this State against the
> delinquent insurer or its assets. [Emphasis added]

WULA argues that "there is no question that the *lis pendens* is 'in the nature of an

attachment, garnishment, or levy of execution.'" WULA's memorandum at 9.

Plaintiffs believe that this substantially misstates Hawaii law, under which it is

well settled that a *lis pendens* is <u>notice</u> to the world of the existence of a pending

lawsuit in which the title to real property is called into question, <u>S. Utsunomiya</u>

<u>Enterprises, Inc. v. Moomuku Country Club</u>, 75 Haw 480, 866 P.2d 951 (1994),

<u>not</u> an "attachment, garnishment or levy of execution." WULA cites no authority

for its "no question" assertion. Attachment, garnishment and levy of execution are

extensively provided for by statute[16] and a *lis pendens* is not among, or even similar to, them.

More significantly, this statute, like the others WULA relies on, has effect only "during the pendency of a liquidation proceeding" in Hawaii or another state. As pointed out above, WULA is in rehabilitation, not liquidation, and the statute simply does not apply. Under the statute, while WULA remains in rehabilitation, it is subject not only to the assertion of a *lis pendens* against its real property in Hawaii, but to "attachment, garnishment or levy of execution" by any plaintiff properly entitled to those remedies.

The statute's use of the phrase "liquidation proceeding, *whether called by that name or not*," (cited at page 9 of WULA's Memorandum) does not change this conclusion. The purpose of this language is to preserve the effect of the statute as to those states which call their liquidators by some term other than "liquidator". Some states, like Washington, use the generic term "receiver" to denote both liquidators and rehabilitators, while others have unique names such as conservators or trustees. But there is no doubt that when a state, in its delinquency statutes, establishes a clear two-part system consisting of both rehabilitation and liquidation "paths",and  appoints its insurance commissioner "Statutory Receiver

---

[16] Attachment, HRS 651-1 through 651-21; garnishment, HRS 652-1 through 652-15; levy of execution, HRS 651-31 through 651-134.

of Western United for the purposes of rehabilitation," Order of Rehabilitation,
Exhibit 1 to WULA's motion, pursuant to the Washington statute governing
rehabilitation, not liquidation, that receiver is, in the language of the Hawaii
statutes, a rehabilitator and not a liquidator, despite his "generic" title.  Thus, a
provision applicable solely to liquidators and not rehabilitators does not apply to
him.

Defendant's Chief Deputy Receiver is not engaged in "a liquidation
proceeding, whether called by that name or not" – he is engaged in a *rehabilitation*
proceeding, explicitly so called by the state courts, in which he is given the title
Receiver.

Plaintiffs' entitlement to the mechanism of a *lis pendens* is clear.  A
*lis pendens* is a "recorded document giving constructive notice that an action has
been filed affecting title or right of possession of the real property described in the
notice."  Urez Corp. v. Superior Court, 190 Cal. App.3d 1141, 235 Cal. Rptr. 837,
839 (Cal. App. 1987), cited with approval in S. Utsunomiya Enterprises, Inc. v.
Moomuku Country Club, supra.  The Utsunomiya court determined that, because
the face of the complaint disclosed that the action was predominantly one for fraud
and breach of contract and seeking damages, rather than asserting a claim of title

to or possession of property, the *lis pendens* there was properly stricken. Id. at 75

Haw. 513, 866 P.2d 967.

> Here, by contrast, the Complaint alleges, *inter alia*:

> 11.  MPP owns an interest in and to the Mauka Land ...

> 12.  Malani has an interest in and to the Mauka Land ...

> 13.  MPF has an interest in and to the Mauka Land ...

Complaint, ¶¶ 11-13.

> Among other remedies, the Complaint seeks:

> Equitable relief, including but not limited to recission of
> the subject agreements ...

Complaint, prayer.


Recission of the agreements between Plaintiffs and WULA will have the effect of

restoring undisputed title and right of possession of the property to Plaintiffs.

> Plaintiffs' claims in this action, therefore, are of such nature as to

support both *quasi in rem* jurisdiction[17] and a *lis pendens* under Hawaii law.[18]

_____

[17] "A judgment *quasi in rem* affects the interests of particular persons in designated property. The latter is of two types. In one the plaintiff is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons. In the other the plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him. Restatement, Judgments, 5-9. Hanson v Denckla, 357 U.S. 235, 246, n. 12 (1958)," Shaffer v Heitner, 433 U.S. 186, 199

V.    CONCLUSION

This is a contract dispute involving a defendant which happens to be an insurance company in rehabilitation.  Both *in rem* jurisdiction over the Hawaii real property which is the subject of the dispute, and *in personam* jurisdiction over Defendant, which has appeared in the litigation without raising the defense of lack of personal jurisdiction, exist.  No provision of insurance or other law deprives this court of jurisdiction to hear and determine Plaintiffs' claims, and Defendant's motion should be denied.

DATED:  Honolulu, Hawai`i, April 10, 2006.

Respectfully submitted,

JOHN S. EDMUNDS
RONALD J. VERGA
LEX R. SMITH
CRAIG K. SHIKUMA
KENNETH M. NAKASONE

Attorneys for Plaintiffs

---

n.17, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).  Plaintiffs' claims here are of the first type, a property interest in the *res* itself.

[18]  S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club, supra.