**(Cite as: 46 Haw. 233, 377 P.2d 708)**
<KeyCite Citations>

Supreme Court of Hawai'i.
Edward Francis **PEINE**
v.
Patrick Michael MURPHY.
No. 4225.

Dec. 4, 1962.

Action to impose a constructive trust on realty purchased in part with funds advanced by plaintiff as the result of fraudulent representations made by defendant. The First Circuit Court, Honolulu County, Ronald B. Jamieson, J., entered judgment in favor of plaintiff and defendant appealed. The Supreme Court, Mizuha, J., held that upon imposition of a constructive trust plaintiff was entitled to the enhanced value, if any, of the property, and defendant would not be permitted to retain the profits and merely account to plaintiff for money advanced.

Judgment affirmed and cause remanded for a final accounting.

West Headnotes

[1] Fraud k50
184k50
Fraud is never presumed.

[2] Fraud k58(1)
184k58(1)
If relief is sought on account of fraudulent representations, facts sustaining the charge should be clearly established.

[3] Fraud k13(1)
184k13(1)

[3] Fraud k18
184k18
If misrepresentations are made the basis of relief, they must be shown to have been made with respect to a material fact which was actually false.

[4] Fraud k20
184k20
Party complaining of fraudulent representations must have relied and acted upon them implicitly, and the representations must have constituted basis upon which the transaction took place.

[5] Appeal and Error k1008.1(5)
30k1008.1(5)
(Formerly 30k1008(1))
Under the clearly erroneous rule, findings of the trial court will not be set aside unless Supreme Court is left with a definite and firm conviction that a mistake was committed by the trial judge. Hawaii Rules of Civil Procedure, rule 52(a).

[6] Contracts k94(1)
95k94(1)
Fraud vitiates all agreements as between parties affected by it.

[7] Joint Adventures k1.10
224k1.10
If an agreement creating a joint adventure had its inception in fraud, it was, as between the parties to it, void ab initio.

[8] Cancellation of Instruments k45
69k45

[8] Joint Adventures k1.10
224k1.10
A party induced to enter into a joint adventure agreement by fraudulent

representations, although he could have a dissolution on such ground, could also obtain a decree rescinding or cancelling the agreement ab initio, and because of fraudulent representations such party could rescind or cancel loan made to party making the fraudulent representations without proof of pecuniary damage.

[9] Trusts k95
390k95
A constructive trust will arise in favor of the person whose money was wrongfully acquired and used, and proof of pecuniary damage is not necessary.

[10] Equity k17
150k17

[10] Trusts k356(1)
390k356(1)
A beneficial owner, in equity, has the right to have title to property transferred to himself if it is in the hands of the wrongdoer.

[11] Equity k17
150k17

[11] Trusts k91
390k91
A constructive trust is a creature of equity and is a means of enforcing an equitable duty created by the doctrine of disgorging unjust enrichment, and as a remedial device it is operative within itself and it can operate to provide for surrender of specific property.

[12] Equity k54
150k54
A conscious wrongdoer is dealt with severely and he may not make a profit and is responsible for all losses arising out of his act.

[13] Trusts k350
390k350
At the option of the rightful owner, a constructive trust may be enforced against property acquired in exchange for property wrongfully disposed of by a conscious wrongdoer.

[14] Trusts k374
390k374
A party who elected to impose a constructive trust upon property acquired from funds he furnished to defendant as a result of fraudulent representations made by defendant was entitled to the enhanced value, if any, of the property, and defendant would not be permitted to retain the profits and merely account to plaintiff for money advanced.

Cancellation of Instruments k4
69k4
One who was induced to loan money by fraudulent representations may obtain a decree rescinding or cancelling the loan, though he proves no pecuniary damage.

Joint Adventures k1.14
224k1.14
One who was induced to enter into a joint adventure agreement by fraudulent representations may obtain a decree rescinding or cancelling the agreement ab initio, though he proves no pecuniary damage.

Trusts k94.5
390k94.5
  (Formerly 390k94 1/2)
A constructive trust will be imposed upon property in favor of a person whose money was fraudulently obtained and used to acquire such property.

Trusts k273
390k273

Where a constructive trust is imposed upon property acquired by money which was fraudulently obtained, the defrauded party is entitled to the appreciated value of the property, if any.

***709 Syllabus by the Court

1. Under H.R.C.P., Rule 52(a), which provides that findings of fact of the trial judge will not be set aside unless clearly erroneous, this court will not set aside findings unless it is left with a definite and firm conviction that a mistake has been committed by the trial judge.

2. One who was induced to enter into a joint adventure agreement by fraudulent representations may obtain a decree rescinding or cancelling the agreement *ab initio*, though he proves no pecuniary damage.

3. One who was induced to loan money by fraudulent representations, may obtain a decree rescinding or cancelling the loan, though he proves no pecuniary damage.

4. A constructive trust will be imposed upon property in favor of a person whose money was fraudulently obtained and used to acquire such property.

5. Where a constructive trust is imposed upon property acquired by money which was fraudulently obtained, the defrauded party is entitled to the appreciated value of the property, if any.

*244 Hyman M. Greenstein, Honolulu, for appellant.

Genro Kashiwa, Honolulu, Henry W. C. Wong, Honolulu (on the brief), for respondent.

*233 Before TSUKIYAMA, C. J., and CASSIDY, WIRTZ, LEWIS and MIZUHA, JJ.

MIZUHA, Justice.

This is an appeal by defendant-appellant Patrick Michael Murphy from a judgment ordering him to convey unto plaintiff-appellee Edward Francis Peine all of his *234 right, title and interest in and to a parcel of land described as 'Hilo Acres' and to file an accounting of all sums of money received or disbursed by him or by his direction or according to his knowledge in the joint adventure for the development of 'Hilo Acres' because of fraud practiced by defendant on plaintiff.

Plaintiff, a real estate salesman, became associated with the defendant, a licensed real estate broker doing business as Canadian Pacific Realty, in December 1957. Shortly thereafter defendant proposed and on various other occasions continued to propose to plaintiff that defendant and plaintiff buy, sell and subdivide some land in Hilo, Hawaii.

In early February 1958, defendant represented to plaintiff that they could acquire a leasehold interest in a parcel of land in Waikiki owned by Mr. and Mrs. Andrew Paterson. Defendant represented that a deposit of $7,500 was required and that defendant would put up $6,000 if plaintiff **710 would put up $1,500. Plaintiff and his wife, Julia Peine, and defendant and a Theresa Zandi signed an 'initial payment receipt and contract' for the purchase of this leasehold interest on February 7, 1958, and plaintiff delivered a check for $1,500 to defendant. About a week later, defendant represented to plaintiff that Mr. and Mrs. Paterson had signed a contract to convey the leasehold interest to them

and the transaction would soon be completed. Defendant represented to the plaintiff that upon resale of the leasehold, plaintiff would receive $9,000, one-half of the total real estate commission amounting to $18,000.

Plaintiff, believing defendant's representations that the leasehold had been acquired, went to the mainland in March 1958 to negotiate for the sale of the leasehold interest to his brother-in-law. Upon learning that his brother-in-law was very much interested in the matter, he *235 communicated this fact to his wife in Honolulu who, in turn, relayed the information to defendant; whereupon defendant informed Mrs. Peine that the transaction was held up by an attorney and the deal was not closed. Upon receipt of this information plaintiff immediately returned to Honolulu.

In a conversation with defendant after his return, plaintiff was informed that the Waikiki Paterson deal would be released very soon, and that they had the leasehold sold. [FN1] During this conversation, defendant proposed that they go to Hilo to look at various parcels of land which had been the subject of prior discussions. [FN2] Defendant *236 and plaintiff went to Hilo, Hawaii and they **711 did purchase in their joint names, [FN3] for the total purchase price of $10,000, a parcel of land described as 'Hilo Acres'. This parcel was to be subdivided by defendant and plaintiff as a joint adventure.

> FN1. Direct examination of Mr. Peine:
> 'Q All right. When you returned to Honolulu, did you go to see Mr. Murphy again?
> 'A Yes, sir, I did.
> 'Q Did you have any further conversation about this deal?
> 'A Yes, sir.
> 'Q The Beach Walk deal?
> 'A Yes, sir. I was very happy with what I had found out on the mainland. I knew we had it sold. And Murphy said, 'Well, we have got it sold now. What are we waiting on? Let's go down to Hilo and take a look around and see what we can find.'
> 'Q All right now, just a minute, before we get to Hilo, let's finish Honolulu. Did you ask him how the deal was in Waikiki?
> 'A Yes, sir. He told me he was sure it would be released here pretty soon. He said it was just a miner [sic] hold up here. He said that Trask hadn't--that he was out or something. I don't remember the exact reason. He wasn't here or something else, and he said it would be released very soon.
>
> * * *
>
> 'Q Now, we are ready for March, following your return from San Francisco. What conversations, if any, did you have with Murphy, relative to Hilo?
> 'A Well, when I came back, I was very happy about the information I had got from my brother-in-law, and I was sure that we had it sold. And Murphy said, 'What are we waiting on? Let's get on the plane now. We have got the Waikiki deal sold.' He said, 'We are making a good profit there,' and he said, 'Let's go down and take a look around at Hilo and see what we can buy on land to be sub-divided."

FN2. Direct examination of Mr. Peine: 'Q Now, let's make our Hilo trip. I think you may have said this, but let's get the subject matter. When did Mr. Murphy first discuss with you Hilo property?
'A When he first discussed it was in December, when I first went to work, when he started talking about buying land down in Hilo and sub-dividing it.
'Q When he first discussed Hilo property with you in December, did you manifest any interest in it?
'A None whatsoever.
'Q And when did he next discuss it with you?
'A He discussed it--well, there were discussions through January but the most of it started in February.
'Q What was your answer to him relative to this proposal, in the month of February?
'A I was not interested in purchasing property in Hilo because----
'Q Did you tell him why?
'A Because----
'Q Did you tell him why?
'A Yes, sir, I did.
'Q What did you tell him?
'A I told him because we did not have the funds to cover both deals. We had to put up buildings on this here Waikiki property and I didn't know whether we would be able to get enough funds to handle everything.
'Q In other words, you wanted to see how the Beach Walk property was coming out?
'A Yes, sir. See how the Beach Walk property turned out.'

FN3. Direct examination of Mr. Peine:
'Q In what name or names was title registered in connection with the purchase of this property of Hilo Acres?
'A It was registered in Mr. Murphy's name and my name.
'Q Why did you include Mr. Murphy's name in the deed?
'A Because I believed that what he told me on the Waikiki deal was true, I believed that I was getting $9,000 on the commission there, and that is why.'

In Hilo, defendant told plaintiff that because of defendant's having put up $6,000 of the deposit in the Paterson deal and defendant's allowing plaintiff to have a commission of $9,000, which was one-half of the $18,000 Waikiki Paterson deal commission, plaintiff should advance the money for the purchase and development of 'Hilo Acres'. Plaintiff paid the purchase price of $10,000 on April 11, 1958 and advanced other development costs. On April 15, 1958, he received a promissory note from the *237 defendant in the amount of $6,275, being one-half of the purchase price and one-half of other preliminary and development costs of the joint adventure advanced by the plaintiff.

Subsequent thereto, subdivided lots were offered for sale and defendant received money from three purchasers. Defendant signed plaintiff's name to the agreements of sale in two of these transactions without plaintiff's authorization and attempted to conceal all three sales from the plaintiff.

There was substantial evidence in the record to show that all of the representations made by defendant with respect to the Waikiki Paterson leasehold

were false. Defendant actually did not take any steps to acquire the leasehold interest from the Patersons. Defendant never presented an offer to the Patersons on behalf of himself and the Peines, nor did he acquire the leasehold interest. Furthermore, defendant used the plaintiff's deposit money of $1,500 for other purposes. In the middle of June 1958, plaintiff discovered the facts about the supposed Waikiki Paterson leasehold transaction and shortly thereafter filed suit.

Although defendant denied any fraud, the lower court upon substantial evidence found that the representations made by the defendant to the plaintiff with respect to the purported purchase and resale of the Waikiki Paterson leasehold interest were fraudulent; that the defendant, through said fraudulent representations, caused plaintiff to enter into a joint adventure agreement with defendant for the purchase, development and resale of 'Hilo Acres'. The lower court further found that plaintiff advanced the entire purchase price of $10,000 and other development costs in reliance upon the false representation that defendant had put up $6,000 in the fictitious Waikiki Paterson deal and was allowing plaintiff half the commission *238 in that deal amounting to $9,000. Based on these findings, the lower court concluded that there was a legally sufficient cause for plaintiff to rescind his joint adventure agreement with defendant and to rescind the loan of $6,275, and accordingly entered the judgment above stated from which this appeal is taken.

The questions involved in this case are whether there is sufficient evidence to support the findings of the lower court, and whether it was justified and correct under the applicable law in rescinding the joint adventure agreement and the loan of $6,275, imposing a constructive trust on defendant's one-half interest in 'Hilo Acres' **712 and ordering him to convey all of said interest to plaintiff.

[1][2][3][4] Fraud is never presumed. Where relief is sought on account of fraudulent representations, the facts sustaining the charge should be clearly and satisfactorily established. 37 C.J.S. Fraud §§ 94, 114; Commercial Credit Corp. v. Sorgel, 274 F.2d 449 (5th Cir.); Roosth v. Lincoln Nat'l Life Ins. Co., 269 F.2d 171 (5th Cir.). Where misrepresentations are made to form the basis of relief, they must be shown to have been made with respect to a material fact which was actually false. 37 C.J.S. Fraud § 18; Adkins v. Wyckoff, 152 Cal.App.2d 684, 313 P.2d 592. The party complaining must have relied and acted upon them implicitly, and the fraudulent representations must have constituted the very basis upon which the transaction took place. 37 C.J.S. Fraud §§ 29-60; King v. Lamborn, 186 F. 21 (9th Cir.); Piazzini v. Jessup, 153 Cal.App.2d 58, 314 P.2d 196; Wells v. Lloyd, 21 Cal.2d 452, 125 P.2d 128, 132 P.2d 471.

[5] H.R.C.P., Rule 52(a) provides that 'Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' The question before this court is whether we are left with a definite *239 and firm conviction that a mistake has been committed by the trial court and that the findings of the trial judge are 'clearly erroneous'. Miller v. Loo, 43 Haw. 76; Lum v. Stevens, 42 Haw. 286; Hawaii Builders Supply Co. v. Kaneta, 42 Haw. 111; Lima v. Tomasa, 42 Haw. 478. It is

our opinion that the findings by the lower court are fully supported by the evidence in the instant case.

[6][7][8] Fraud vitiates all agreements as between the parties affected by it. 68 C.J.S. Partnership § 13; 12 C.J.S. Cancellation of Instruments § 20; Knapp v. First Nat'l Bank & Trust Co., 154 F.2d 395 (10th Cir.). If the agreement creating the joint adventure had it inception in fraud, it was, as between the parties to it, void *ab initio*. 2 Bates, Partnership, § 595; Mechem, Elements of Partnership, § 373. Plaintiff who was induced to enter into the joint adventure agreement by fraudulent representations, although he may have a dissolution on this ground, may also obtain a decree rescinding or cancelling the agreement *ab initio*. Harlow v. La Brun, 82 Hun 292, 31 N.Y.S. 487, Id., 151 N.Y. 278, 45 N.E. 859; Knapp v. First Nat'l Bank & Trust Co., supra. Likewise, because of the fraudulent representations with reference to the commission of $9,000 plaintiff may rescind the advance and loan of $6,275. Dime Savings Bank v. Fletcher, 158 Mich. 162, 122 N.W. 540, 35 L.R.A.,N.S., 858.

It is contended by counsel for the defendant that since no pecuniary damage was proved by the plaintiff, this is not an actionable fraud. 37 C.J.S. Fraud §§ 40-41. While the law of fraud and deceit requires that the plaintiff prove special damages to himself, the rule in equity is more liberal to the plaintiff. Equity has broad powers in this class of cases. See Bispham's Principles of Equity, § 194; Clark Equity, § 310.5; 12 C.J.S. Cancellation of Instruments § 77a, p. 1078; 30 C.J.S. Equity §§ 48-50; McGaffee v. McGaffee, 244 Iowa 879, 56 N.W.2d 36, 58 N.W. 357. 'Equity will not be overnice in balancing the efficacy of one *240 remedy against the efficacy of another, when action will baffle, and inaction may confirm, the purpose of the wrongdoer.' Falk v. Hoffman, 233 N.Y. 199, 202, 135 N.E. 243, 244.

Plaintiff's suit in the trial court was clearly based on a constructive trust-unjust enrichment theory in equity where rescission and other relief may be given even though plaintiff did not prove any pecuniary damage. 'There may be an injury without pecuniary loss that is as revolting to conscience as if actual damages had ensued.' King v. Lamborn, supra, 186 F. at 28. See also Williams v. Kerr, 152 Pa. 560, 25 A. 618; Wood v. Jotham Bixby Co., 29 Cal.App.2d 294, 84 P.2d 204; **713 Stewart v. Winter, 133 Me. 136, 174 A. 456.

In Mather v. Barnes, Keighley, & Greer, 146 F. 1000, 1004, C.C., the court stated: '* * * A misrepresentation with regard to material facts, by which a purchase of property is intentionally induced, amounts to a fraud which vitiates the transaction, and entitles the purchaser to be relieved. * * * Neither does it matter, if misrepresentation be proved, that the bargain, even so, was a good one, from which the purchaser is likely to sustain no loss. In an action of deceit, no doubt, this would be relevant on the question of damages, in order to show that there were none * * * but not so upon a bill to rescind (Hansen v. Allen, 117 Wis. 61, 93 N.W. 805; Clapp v. Greenlee, 100 Iowa, 586, 69 N.W. 1049). * * *'

In MacLaren v. Cochran, 44 Minn. 255, 46 N.W. 408, 409, it was held that 'If a party is induced to enter into a contract by fraudulent representations as to a fact which he deems material, and upon which

he has a right to rely, he may rescind the contract upon the discovery of the fraud, and the party in the wrong should not be heard to *241 say that no real injury can result from the fact misrepresented. * * *' To the same effect, see Martin v. Hill, 41 Minn. 337, 43 N.W. 337; Wainscott v. Occidental Bldg. & Loan Assn., 98 Cal. 253, 33 P. 88; Williams v. Kerr, supra; Harlow v. La Brun, supra.

Defendant contends that the judgment of the lower court did not place the parties in the position they occupied before the joint adventure agreement was entered into and that the lower court placed plaintiff in a better position than he would have been had there been no 'Hilo Acres' transaction. This contention is based on the assumption that the value of 'Hilo Acres' had increased materially over the purchase price and expenses incurred, although there is no definite proof of same.

[9][10]  It is the general rule that a constructive trust will arise in favor of the person whose money was wrongfully acquired and used. 89 C.J.S. Trusts §§ 145-146; Restatement on Restitution (1937), §§ 166, 202; Humphreys v. Butler, 51 Ark. 351, 11 S.W. 479; Preston v. Moore, 133 Tenn. 247, 180 S.W. 320, L.R.A.1916C, 578; West v. Stainback, 108 Cal.App.2d 806, 240 P.2d 366. The beneficial owner, in equity, has the right to have the title to the property transferred to himself if it is in the hands of the wrongdoer. Cisewski v. Cisewski, 129 Minn. 284, 152 N.W. 642. See also Restatement on Restitution (1937), § 160; Knox v. Knox, 222 Minn. 477, 25 N.W.2d 225.

As expressed in the Restatement on Restitution (1937), § 202, Comment c, '* * * the person whose property is wrongfully used in acquiring other property can by a proceeding in equity reach the other property and compel the wrongdoer to convey it to him. The wrongdoer holds the property so acquired upon a constructive trust for the claimant.' McGaffee v. McGaffee, supra; Dime Savings Bank v. Fletcher, supra.

[11]  *242 The constructive trust as a 'creature of equity' remains free from the technical objections which may be raised in an action at law. Although we no longer have any procedural distinctions between law and equity, H.R.C.P., Rule 2, constructive trust retains its distinctive character as a means of enforcing an equitable duty created by the doctrine of disgorging unjust enrichment without resorting to legal fictions and formalities. Restatement on Restitution (1937), § 160. As a remedial device, it is operative within itself, and it can operate to provide for the surrender of specific property. Justice Cardozo in Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 386, 122 N.E. 378, 380, states:
> '* * * A constructive trust is the formula through which the conscience of equity finds expression. When property **714 has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. * * *' See Pound, Progress of the Law, 33 Harv.L.Rev. 420; 4 Scott, Trusts, § 462 (2d ed. 1956).

Under defendant's theory, a person can never lose anything if he negotiates a deal through fraudulent representations whereby he induces another to advance and loan him one-half of the purchase price and development costs and thereby

becomes an equal partner in a joint adventure to purchase, develop and without risking any of his own money if he is not afterwards brought to account for his fraudulent representations. If he is brought to account, he at least would not lose anything by his misconduct, but wo subdivide a parcel of land. He stands an excellent chance of making a profit uld be permitted to repay the loan and retain his share of any profits even though the fraud is discovered. Rescission and restitution *243 to plaintiff by defendant for merely the advance and loan made by plaintiff for the purchase and development of 'Hilo Acres' as contended by defendant, would have little or no deterrent effect, for wrongdoers would run no risk of liability to their victims of fraud beyond returning what they fraudulently obtained. Cf., Ward v. Taggart, 51 Cal.2d 736, 336 P.2d 534; Briggs v. Rodriguez, 236 S.W.2d 510 (Tex.Civ.App.).

[12][13] A conscious wrongdoer is, by policy of law, dealt with severely and he may not make a profit and is responsible for all losses arising out of his act. Restatement on Restitution (1937), § 202, Comment c; Falk v. Hoffman, supra; Bowen v. Richardson, 133 Mass. 293, 296. At the option of the rightful owner, a constructive trust as in Locke v. Old Colony Trust Co., 289 Mass. 245, 193 N.E. 892, or equitable lien as in Sullivan v. Sullivan, 321 Mass. 156, 71 N.E.2d 894, may be enforced against property acquired in exchange for property wrongfully disposed of by the conscious wrongdoer. Restatement on Restitution (1937), § 202, Comment c and d; 4 Scott, Trusts, §§ 508, 517.2. When property is restored to an owner who has been deprived of it by fraud, the owner of the property should have the profit rather than the one who made the profit therefrom after obtaining it by fraudulent representation, although the enhanced value of the property puts the original owner of the property in a better position than that in which he would have been had no wrong been done to him. McGaffee v. McGaffee, supra. See Ward v. Taggart, supra, where the court not only imposed a constructive trust to recover profits wrongfully acquired by fraudulent representations, but also awarded exemplary damages. See also Briggs v. Rodriguez, supra.

[14] Plaintiff having elected to impose a constructive trust upon the property that was acquired from funds he furnished to defendant as a result of the fraudulent representations *244 made by defendant, is entitled to the enhanced value, if any, that may have accrued to him as a result of his election. [FN4]

> FN4. Restatement on Restitution (1937), § 202, Comment c.
> 'Constructive trust. Where a person by the consciously wrongful disposition of the property of another acquires other property, the person whose property is so used is not only entitled to hold the wrongdoer personally liable for the value of the property wrongfully disposed of but he is entitled as an alternative to the property so acquired. If the property so acquired is or becomes more valuable than the property used in acquiring it, the profit thus made by the wrongdoer cannot be retained by him; the person whose property was used in making the profit is entitled to it. The result, it is true, is that the claimant obtains more than the amount of which he was deprived, more than

restitution for his loss; he is put in a better position that that in which he would have been if no wrong had been done to him. Nevertheless, since the profit is made from his property, it is just that he should have the profit rather than that the wrongdoer should keep it. It is true that if there had been a loss instead of a profit, the wrongdoer would have had to bear the loss, since the wrongdoer would be personally liable to the claimant for the value of the claimant's property wrongfully used by the wrongdoer. If, however, the wrongdoer were permitted to keep the profit, there would be an incentive to wrongdoing, which is removed if he is compelled to surrender the profit. The rule which compels the wrongdoer to bear any losses and to surrender any profits operates as a derrent upon the wrongful disposition of the property of others. * * *'

**715 The lower court has retained jurisdiction of this cause to arrive at a final accounting of all sums of money received or disbursed by defendant or by his direction or his knowledge in the joint adventure. On remand, defendant is not entitled to a deduction of any costs incurred by him to accomplish the fraud. However, defendant is entitled to a deduction of all appropriate expenses paid by him in connection with the development and sale of the lots in 'Hilo Acres'.

The judgment appealed from is affirmed. Cause remanded for a final accounting of the proceeds from 'Hilo Acres' consistent herewith.

46 Haw. 233, 377 P.2d 708

END OF DOCUMENT