Of Counsel:
PRICE, OKAMOTO, HIMENO & LUM

WARREN PRICE, III 1212
TERENCE S. YAMAMOTO 1668
Ocean View Center
707 Richards Street, Suite 728
Honolulu, Hawaii 96813
Telephone: (808) 538-1113
Facsimile: (808) 533-0549
Email: wprice@pohlhawaii.com
Email: tyamamoto@pohlhawaii.com

Attorneys for Defendant
WESTERN UNITED LIFE
ASSURANCE COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MOKULEIA PRESERVATION PARTNERS, L.L.C.; MALANI, INC. and MOKULEIA POLO FARMS, L.L.C.,<br><br>Plaintiffs,<br><br>vs.<br><br>WESTERN UNITED LIFE ASSURANCE COMPANY,<br><br>Defendant. | CIVIL NO. 04-00283 DAE BMK<br><br>DEFENDANT WESTERN UNITED LIFE ASSURANCE COMPANY'S **REPLY** TO PLAINTIFFS MOKULEIA PRESERVATION PARTNERS, L.L.C., MALANI, INC., MOKULEIA POLO FARMS, L.L.C.'S MEMORANDUM IN OPPOSITION TO DEFENDANT WESTERN UNITED LIFE ASSURANCE COMPANY'S MOTION TO DISMISS *IN REM* CLAIMS AND FOR EXPUNGEMENT OF NOTICE OF PENDENCY OF ACTION, FILED 4/10/06; CERTIFICATE OF SERVICE<br><br>HEARING:<br>Date: April 28, 2006<br>Time: 9:45 a.m.<br>Judge: Hon. David A. Ezra |

DEFENDANT WESTERN UNITED LIFE ASSURANCE COMPANY'S **REPLY** TO PLAINTIFFS MOKULEIA PRESERVATION PARTNERS, L.L.C., MALANI, INC., MOKULEIA POLO FARMS, L.L.C.'S MEMORANDUM IN OPPOSITION TO DEFENDANT WESTERN UNITED LIFE ASSURANCE COMPANY'S MOTION TO DISMISS *IN REM* CLAIMS AND FOR EXPUNGEMENT OF NOTICE OF PENDENCY OF ACTION, FILED 4/10/06

## I. INTRODUCTION

In their memorandum in opposition to this motion ("Memo"), plaintiffs remove any doubt that the *lis pendens* they filed is invalid and should be immediately expunged.

First, as demonstrated below, plaintiffs' *lis pendens* is invalid on its face under controlling Hawaii law.

Second, plaintiffs' allegation of an "ownership interest" in the Mauka Lands is invalid on the face of the complaint.

Third, it is now a matter of record in this Court that plaintiffs filed their *lis pendens* for no reason other than to give them "additional leverage for negotiating purposes" [1] "to collect money damages" [2] – a use of a *lis pendens* expressly found invalid by the Hawaii Supreme Court.[3]

Finally, although the Court does not have to address the "jurisdictional" issues in light of the above, a good illustration of how plaintiffs have improperly filed the *lis*

---

[1] S. *Utsunomiya Enters. v. Moomuku Country Club*, 75 Haw. 480, 512, 866 P.2d 951, 967 (Haw. 1994) (hereinafter "*Utsunomiya*").

[2] *Id.*, 866 P.2d at 96.

[3] *Id.* at 966-67.

*pendens* in this case is found in their core "jurisdictional" arguments, to wit, that before the jurisdictional issue can be decided there must be a threshold determination regarding whether defendant ("WULA") owns the Mauka Land.

This "argument" is obviously groundless – notwithstanding plaintiffs' extensive discussion -- because plaintiffs have admitted that "WULA currently holds title to the Mauka Land." [4] This argument does, however, demonstrate just how improperly plaintiffs acted by filing their *lis pendens*.

**II. BACKGROUND**

Mr. A. Bernard Bays owned Malani, Inc. ("Malani") and contracted to buy the Mauka Land from a Japanese company, Sankyo. Bays/Malani then entered into an agreement with Summit – an affiliate of Metropolitan Mortgage & Securities Co., Inc. ("Metro") – to "flip" the property to Metro via a double escrow.

When this occurred, the title of the property went from Sankyo, to Malani, to Metro. Metro funded the entire transaction. Metro also entered into four (4) contracts with Bays and his business partner, Michael Dailey, through various LLC entities: (1) Development Agreement – with Mokuleia Preservation Partners, LLC ("MPP");[5] (2) Property Management

[4] Complaint, ¶ 10.

[5] *See* Ex. D to Plaintiffs' Memo, "Dillingham Ranch Development

Agreement – with an LLC that is not a party;[6] (3) Malani Consultant Agreement – (Bays LLC);[7] and (4) MPF Consultant Agreement – with Mokuleia Polo Farms, LLC ("MPF")(Dailey LLC).[8]

After the "flip" sale and the above Agreements were in place, Metro sold the Mauka Land to WULA. As a part of that sale, WULA joined Metro in the four Agreements.

The complaint alleges that WULA breached all of the Agreements, and seeks money damages for each. Plaintiffs' major claim relates to the Development Agreement under which Bays/Dailey are to receive a share of the proceeds **if** WULA sells the Mauka Land. There is currently a contract to sell with a closing date of May 15, 2006.

The major dispute relates to the formula that determines the allocation of any sales proceeds, and how that formula is interpreted.

## III. PLAINTIFFS' *LIS PENDENS* IS INVALID ON ITS FACE

The lis pendens plaintiffs filed against WULA's property states, in pertinent part:

---

Agreement."

[6] *Id.*, "Property Management Agreement."

[7] *Id.*, "[Malani] Consultant Agreement."

[8] *Id.*, "[MPF] Consultant Agreement."

> (Plaintiffs) have filed a Complaint in the above-captioned action to enforce ***their equitable lien*** on the real property as described in the Warranty Deed … .[9]

In *Utsunomiya*, the Hawaii Supreme Court noted that an "equitable lien" has no legal significance since it is nothing but an unliquidated claim until there is a judgment declaring its existence.[10] The Court made clear that a *lis pendens* cannot be predicated on an "equitable lien" because:

> An 'equitable lien' is a mere floating equity that is unenforceable and does not encumber property.[11]

Utsunomiya also made clear that a *lis pendens* is an encumbrance on property[12] -- contrary to plaintiffs' claims.[13]

Accordingly, when plaintiffs filed their *lis pendens* -- by its own terms predicated on their claim of an equitable lien -- plaintiffs improperly encumbered WULA's property.

## IV. PLAINTIFFS ARE SEEKING MONEY DAMAGES - NO MATTER HOW THEY TRY TO DISGUISE THEIR CLAIMS

Despite plaintiffs' allegations of an "ownership interest" in the Mauka Lands, the only thing plaintiffs are seeking in this case is money damages for breach of contract -- "*in a sum*

---

9 Notice of Pendency of Action ("*lis pendens*"), Ex. 5 to WULA's motion (emphasis added).

10 866 P.2d at 962.

11 *Id.*

12 *Id.* at 963.

13 See Declaration of Kenneth M. Nakasone ¶ 3, WULA Ex. 5.

*equal to the amount due and owing MPP under the Development Agreement.”* [14]

Aside from their complaint, plaintiffs confirm this repeatedly in their Memo. In their “Introduction” and “Factual Summary” sections, plaintiffs state they seek “proceeds” from the sale of the Mauka property,[15] and even allege how much they seek.[16]

Significantly, in the “Procedural Summary” of their Memo, they confirm they are using the *lis pendens* as settlement leverage for money damages:[17]

> “WULA seeks to renege on its agreement to make a fair distribution of the proceeds of what it represents is an impending sale . . . Significantly, WULA has never yet made any formal written offer to pay Plaintiffs any portion of the sales proceeds.” “WULA should be estopped from raising a jurisdictional challenge.” [18]

As demonstrated below, this statement graphically illustrates plaintiffs’ attempt to use a *lis pendens* as settlement leverage.

---

[14] Complaint, ¶ 18.

[15] Memo at 1, 3.

[16] *Id.* at 3, 4.

[17] *Id.* at 7-9 *passim.*

[18] *Id.* at 9.

## V. PLAINTIFFS' CLAIM OF AN "OWNERSHIP INTEREST" IS A PRETEXT

Plaintiffs contend that their "ownership interest" in the Mauka Land – the predicate for their *lis pendens* – arises from three of their four Agreements with Metro, and thus with WULA.

### A. The Agreements

The complaint alleges that each of the Agreements contains provisions that provide plaintiffs with an "ownership interest" in the Mauka Land. However, none of these Agreements have any such language – anywhere.

Indeed, it is clear from these contracts that Metro (the entity that signed the Agreements) went out of its way to make sure that plaintiffs did not have any "ownership" of anything, and specifically noted that plaintiffs were not partners, or even joint venturers, but were merely independent contractors.

### B. Plaintiffs' Actual Claim – There Was An ORAL Agreement That They Had An "Ownership Interest"

As demonstrated above, notwithstanding plaintiffs' allegations, nowhere in any of their Agreements are they given any "ownership interest" in the Mauka Land. Accordingly, the natural question arises: what IS the source of plaintiffs' alleged "ownership interest" upon which they have placed an encumbrance on WULA's property through their (invalid) *lis pendens*?

The answer is truly astounding.

As it turns out, plaintiffs' actual claim is that even though the Agreements say nothing about conveying an "ownership interest" to them, WULA had agreed that they did:

> WULA agreed that MPP, Malani and MPF owned interests in and to the Mauka Land and that the Development Agreement, Malani Agreement and MPF Agreement *would document MPP's, Malani's and MPF's interest in and to the Mauka Land.*[19]

Thus, the entire basis for plaintiffs' "ownership interest" claim in this case -- the entire basis for filing their *lis pendens* -- is a claim by plaintiffs that WULA "agreed" to such an ownership interest and that the Agreements (which include nothing about plaintiffs' having an "ownership interest") would "document" such an interest.

Aside from the obvious Statute of Frauds problem with this claim, when it is juxtaposed with the fact that plaintiffs' *lis pendens* is invalid on its face, plaintiffs' true motive comes into even sharper focus.

## VI. PLAINTIFFS' *LIS PENDENS* IS INVALID UNDER HAWAII LAW ON MULTIPLE GROUNDS

In *Utsunomiya*, the plaintiff contracted to buy real property and made a $200,000 deposit. When it was determined that there were problems with clear title, he sued the seller

[19] Complaint, ¶ 16 (emphasis added).

and filed a *lis pendens*. He claimed this was proper under the Hawaii statute because his claim concerned or affected "the title or right of possession of real property."[20]

In its decision relating to this claim, the Hawaii Supreme Court made several findings that are directly applicable to this case.

**A. The Claim Must Directly Seek Title Or Possession**

First, the Court found:

- HRS 634-51 is ambiguous to the extent it allows a *lis pendens* in an action "concerning" or "affecting" the title or right of possession of real property.[21]

- The lis pendens statute must be strictly construed, and the application of *lis pendens* should be limited to actions *directly* seeking to obtain title to or possession of real property.[22]

In the present case, plaintiffs do not directly seek **to obtain title or possession** of the Mauka Land. As demonstrated above, they are seeking money damages for breach of contracts, and a share of the "proceeds" from WULA's pending sale of the property.

---

[20] Hawaii Revised Statutes § 634-51.

[21] 988 P.2d at 965.

[22] *Id.* at 966.

### B. Pleading Equitable Claims Does Not Make A *Lis Pendens* Proper

The Court also noted that a *lis pendens* does not become proper just because an "equitable claim" is added to a claim for money, which is obviously what plaintiffs herein have done:

- Plaintiff used the *lis pendens* statute to "secure a prejudgment writ of attachment under the guise of a *lis pendens* to secure its damages." [23]

- A claim of fraud and equitable lien and constructive trust is nothing but an attempt to secure a money judgment.

- "[A]llegations of equitable remedies, even if colorable, will not support a lis pendens if, ultimately, those allegations act only as a collateral means to collect money damages." [24]

### C. The Court Specifically Prohibited The Use Of A *Lis Pendens* To Leverage A Settlement

Finally, the Hawaii Supreme Court addressed the issue of the improper use of a *lis pendens* to leverage a settlement, exactly what the record reflects plaintiffs herein are attempting:

- "It must be borne in mind that the true purpose of the statute is to provide notice of pending litigation and not to make plaintiffs secured creditors of defendants nor to provide plaintiffs with additional leverage for negotiating purposes." [25]

---

[23] *Id.*

[24] *Id.*

[25] *Id.* at 966-67.

- "[T]he practical effect of a recorded lis pendens is to render a defendant's property unmarketable and unusable as security for a loan. The financial pressure exerted on the property owner may be considerable, forcing him to settle not due to the merits of the suit but to rid himself of the cloud on his title. ***The potential for abuse is obvious***." [26]

In conclusion, this is a textbook case of the misuse of a *lis pendens* – under Hawaii law and otherwise. Indeed, plaintiffs have used their claim of an "equitable lien" – an unliquidated claim with absolutely no legal significance that cannot be an encumbrance on land – and encumbered WULA's land via the instant *lis pendens*.

The record in this Court is now clear that plaintiffs have done this to leverage a settlement, and indeed, have actually urged this Court to – literally – afford them a "secured judgment" if they do not get a settlement that THEY consider "fair." [27]

**VII. PLAINTIFFS' "RESCISSION" CLAIM DOES NOT MAKE THEIR *LIS PENDENS* VALID**

Because it is so obvious under *Utsunomiya* that plaintiffs cannot base their *lis pendens* on an unliquidated "equitable lien" – which they did anyway – plaintiffs apparently sought to

---

[26] *Id.* at 967 (emphasis added).

[27] Plaintiffs seek to have this Court condition any sale of the Mauka property on a deposit of sale proceeds into the registry of the Court (Memo at 33).

fortify their position by adding a "fraudulent inducement" count to their complaint, and by seeking rescission as a remedy.

They claim they were defrauded by Summit, Metro and WULA into selling the Mauka Land after purchasing it from Sankyo, and seek to have the Mauka Land returned to them.[28] This claim against "title" is – apparently - supposed to make their *lis pendens* valid.

As the Court will note, however, this claim changes nothing. As discussed above, WULA was not involved in the sale between Sankyo and Malani, or the sale between Malani and Metro. Accordingly, since plaintiffs did not "sell" the Mauka Land to WULA,[29] there is obviously nothing to be rescinded.

Moreover, plaintiffs make clear that they know Metro is in bankruptcy,[30] and thus any claim to "unwind" the entire transaction involving Metro – a non-party – is not within the jurisdiction of this Court. Yet plaintiffs make this claim anyway.

The bottom line is that this 'rescission' claim is just another example of plaintiffs' attempt to justify the fact that

---

[28] Complaint, ¶ 31 (False statements "made with the intent to induce MPP, Malani and MPF to transfer their interest in the Mauka Land and/or to perform on the [Agreements].")

[29] Warranty Deed, attached to the *lis pendens*, WULA's Ex. 5.

[30] Memo at 5 n.3.

they have wrongfully and intentionally filed a *lis pendens* on WULA's property and have refused to remove it unless they receive a "fair" settlement.

## VIII. PLAINTIFFS' JURISDICTIONAL ARGUMENTS ARE WITHOUT MERIT

### A. Plaintiffs' Argument That An Arbitrator Must Determine Ownership Is Without Merit

In paragraph 10 of their complaint, plaintiffs admit **WULA currently holds title to the Mauka Land**. Despite this, plaintiffs argue that this Court should not grant WULA's motion and expunge the *lis pendens* because an arbitrator must determine whether WULA has an ownership interest:

> Only if an arbitrator (or this Court) determines that the subject property belongs to WULA does that property become part of the estate to which Defendant Metcalf succeeds by order of the Washington Court.[31]

This argument is obviously groundless since there is no question – and plaintiffs have admitted – that WULA owns the Mauka Land.

Furthermore, plaintiffs' cases have no application here as WULA's title is indisputable and the cases do not involve real property or *lis pendens*.[32]

---

[31] Memo at 12-13.

[32] For example, in *Bennett v. Liberty National Fire Ins. Co.*, 968 F.2d 969 (9th Cir. 1992) and *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372 (9th Cir. 1997), the defendants asserted that the insolvent insurers' claims for contract damages were subject to arbitration, and the courts agreed. However, in reaching this conclusion, the court in *Bennett* acknowledged that the

**B. The Receiver-Liquidator Distinction Is Irrelevant To This Motion**

Plaintiffs' next tack is to note WULA is in rehabilitation, not liquidation, and that both the Washington and Hawaii statutes prohibit suits against an insurer in liquidation, but only provide for a 90-day stay of actions against an insurer in rehabilitation.[33] Plaintiffs therefore conclude their *lis pendens* on WULA's real property should not be expunged.

Plaintiffs' reasoning is textbook misdirection. WULA is not claiming that plaintiffs are somehow prohibited from suing WULA because of these statutes. WULA seeks expungement of the improper *lis pendens*, and granting WULA this relief will not preclude plaintiffs from pursuing their claims and trying to prove them.

**C. Plaintiffs' Discussion of Anti-Suit Injunctions Is Irrelevant**

Plaintiffs' discussion of anti-suit injunctions is equally irrelevant. WULA's motion is not based on any anti-suit injunction provisions, and WULA has not sought any dismissal

---

state insolvency statutes granted the liquidator "complete control and authority over the insolvent's assets." *Bennett*, 968 F.2d at 972. The court correctly noted, however, that the insolvent insurer's *inchoate*, disputed monetary damages claims were not an asset of the estate subject to the liquidator's authority to distribute. *Id.* Stated simply, the insurer's *claims* did not become an asset until they were actually reduced to a damages award. In contrast, plaintiffs have conceded WULA's title to the Mauka Land.

based on an injunction under applicable Washington statutory provisions.

**IX. PLAINTIFFS' FULL FAITH AND CREDIT ARGUMENT IS BASELESS**

WULA has not asserted that the Washington rehabilitation order is entitled to "full faith and credit." Indeed, there has been no adjudication of plaintiffs' rights or claims – in Washington or anyplace else -- and there is no judgment that WULA asserts is entitled to full faith and credit to bind plaintiffs.

**X. CONCLUSION**

For the reasons discussed above, it is respectfully requested that this Court grant WULA's motion to the extent it asks the Court to expunge plaintiffs' *lis pendens* and leave for future determination any other related jurisdictional issues.

DATED: Honolulu, Hawaii, April 17, 2006.

/s/ Terence S. Yamamoto
WARREN PRICE, III
TERENCE S. YAMAMOTO

Attorneys for Defendant
WESTERN UNITED LIFE ASSURANCE COMPANY

[33] Memo at 13-22.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MOKULEIA PRESERVATION PARTNERS, L.L.C.; MALANI, INC. and MOKULEIA POLO FARMS, L.L.C.,<br><br>Plaintiffs,<br><br>vs.<br><br>WESTERN UNITED LIFE ASSURANCE COMPANY,<br><br>Defendant. | CIVIL NO. 04-00283 DAE BMK<br><br>CERTIFICATE OF SERVICE |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of DEFENDANT WESTERN UNITED LIFE ASSURANCE COMPANY'S **REPLY** TO PLAINTIFFS MOKULEIA PRESERVATION PARTNERS, L.L.C.; MALANI, INC., MOKULEIA POLO FARMS, L.L.C.'S MEMORANDUM IN OPPOSITION TO DEFENDANT WESTERN UNITED LIFE ASSURANCE COMPANY'S MOTION TO DISMISS *IN REM* CLAIMS AND FOR EXPUNGEMENT OF NOTICE OF PENDENCY OF ACTION, FILED 4/10/06.

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served Electronically through CM/ECF:

Kenneth M. Nakasone kmn@ksglaw.com

Craig K. Shikuma cks@ksglaw.com

Lex R. Smith lrs@ksglaw.com

Ronald J. Verga rverga@ev-law.com

Served via facsimile and U.S. Mail, postage prepaid to:

JOHN S. EDMUNDS, ESQ.
RONALD J. VERGA, ESQ.
Edmunds & Verga
Davies Pacific Center
841 Bishop Street, Suite 2104
Honolulu, Hawaii 96813

Attorneys for Plaintiffs
MOKULEIA PRESERVATION PARTNERS, L.L.C.; MALANI, INC. and MOKULEIA POLO FARMS, L.L.C.

DATED: Honolulu, Hawaii, April 17, 2006.

/s/ Terence S. Yamamoto
WARREN PRICE, III
TERENCE S. YAMAMOTO

Attorneys for Defendant
WESTERN UNITED LIFE ASSURANCE COMPANY