EXHIBIT "A"

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

47 S.Ct. 714
274 U.S. 640, 47 S.Ct. 714, 71 L.Ed. 1270
**(Cite as: 274 U.S. 640, 47 S.Ct. 714)**
<KeyCite History>

Supreme Court of the United States.
INDEPENDENT COAL & COKE CO. et al.
v.
UNITED STATES.
No. 300.

Argued April 26, 1927.
Decided May 31, 1927.

Mr. Justice McReynolds, Mr. Justice Sutherland, and Mr. Justice Butler, dissenting.

On Writ of Certiorari to the United States Circuit Court of Appeals for the Eighth Circuit.

Suit by the United States against the Independent Coal & Coke Company, the Carbon County Land Company, and Carbon County. Decree dismissing the bill was reversed by Circuit Court of Appeals (9 F. (2d) 517), and two first named defendants bring certiorari. Affirmed.

See, also, 270 U. S. 639, 46 S. Ct. 355, 70 L. Ed. 774.

West Headnotes

[10] Limitation of Actions k5(1)
241k5(1)
Statutes of limitations are to be narrowly construed against government.

Certiorari k64(1)
73k64(1)
In suit in nature of supplemental bill in aid of former decree, court on certiorari may consider pleadings and proceedings in earlier suit.

Equity k441
150k441
Government's suit to impress trust on land and compel conveyance to it, in nature of supplemental bill in aid of former decree holding certification to state was fraudulently obtained, *held* appropriate remedy. Act July 16, 1894, §§ 8, 10, 28 Stat. 109, 110.

Trusts k339
390k339
One fraudulently procuring conveyance may not protect himself by having title conveyed to innocent third person.

Trusts k357(1)
390k357(1)
One fraudulently obtaining property and conveying to innocent purchaser for value cannot reacquire it free from obligation to make restitution.

Vendor and Purchaser k238
400k238
Purchaser with notice of outstanding equity, conveying to innocent purchaser and later repurchasing, may not hold free of the equity.

Vendor and Purchaser k240
400k240
Bona fide purchase is affirmative defense.

Public Lands k118
317k118
Government's suit to impress trust on mineral land fraudulently certified to state *held* not barred by limitations affecting suits to annul patent. Statute of Limitations, § 8, 43 U.S.C.A. § 1166.

Public Lands k128
317k128
Acquisition of mineral land from state under contracts assigned by persons enjoined from asserting title created trust for government. Act July 16, 1894, 28 Stat. 109, 110, §§ 10, 11.

Public Lands k128
317k128
Bill to impress trust on land certified to state *held* to show defendant was claiming interest subject to government's equities.
**715 *641 Mr. Mahlon E. Wilson, of Salt Lake City, Utah, for petitioner Independent Coal & Coke Co.

Mr. Frank K. Nebeker, of Washington, D. C., for petitioner Carbon County Land Co.

The Attorney General and Mr. Alfred A. Wheat, of Washington, D. C., for the United States.

*642 Mr. Justice STONE delivered the opinion of the

Court.

This is a second suit by the United States, and is in aid of the first, for the restoration to the government of some 5,500 acres of public lands located in Utah, title to which was procured by a fraud perpetrated upon the land officers of the United States. The first suit, which resulted in a judgment for the government (affirmed 238 F. 431), was predicated upon the following circumstances:

The United States, in 1894, made a grant of public lands to the state of Utah to aid in the establishment of an agricultural college, certain schools and asylums, and for other purposes. Sections 8 and 10, Act of July 16, 1894, c. 138, 28 Stat. 107, 109, 110. Mineral lands were not included. See Milner v. United States (C. C. A.) 228 F. 431, 439; United States v. Sweet, 245 U. S. 563, 38 S. Ct. 193, 62 L. Ed. 473; Mullan v. United States, 118 U. S. 271, 276, 6 S. Ct. 1041, 30 L. Ed. 170; section 2318, R. S. (Comp. St. s 4613). The grant was not of lands in piece. Selections were to be made by the state with the approval of the Secretary of the Interior, from unappropriated public lands, in such manner as the Legislature should provide. The Legislature (Laws Utah 1896, c. 80) later created a board of land commissioners, with general supervisory powers over the disposition of the lands, and with authority to select particular lands under the grants.

During the period from December 10, 1900, to September 14, 1903, Milner and others, the predecessors in interest of the Carbon County Land Company, one of the petitioners, made several applications to the state commission to select and obtain in the name of the state the lands now in question, and at the same time entered *643 into agreements with the commission to purchase the lands from the state. In aid of the applications and agreements, Milner and his associates filed affidavits with the commission, stating that they were acquainted with the character of these lands, which they affirmed were nonmineral and did not contain deposits of coal. They also deposed that the applications were not made for the purpose of fraudulently obtaining mineral holdings, but to acquire the land for agricultural use. The applicants were obviously aware that the affidavits or the information contained in them would in due course be submitted to the Land Office of the United States with the state commission's selections, as they were in fact. On the faith of these and other documents, the selections were approved by the Secretary of the Interior and the tracts in question were certified to the state on various dates, the last being in December, 1904. Certification was the mode of passing title from the United States to the state.

**716 In January, 1907, the United States brought the first suit, against Milner and his associates and the Carbon County Land Company, which had been organized by Milner to take over the land, and was controlled by him. The suit was founded on the charge that the certifications were procured by the fraudulent misrepresentations of Milner and the others, since they knew at the time of the applications that the lands contained coal deposits. Although the bill in the present case states that the relief asked was the cancellation of the contracts between the state and Milner and his associates, this allegation is apparently inadvertent, for the record elsewhere indicates that the bill in fact sought the quieting of the government's title. It affirmatively appears that on June 8, 1914, the District Court entered a decree declaring that the United States 'is the owner' and 'entitled to the possession' of the lands in question and that the defendants '*644 have no right, title, or interest, or right of possession,' and perpetually enjoining them 'from setting up or making any claim to or upon said premises.' The Circuit Court of Appeals, in affirming the decree, held that 'the whole transaction was a scheme or conspiracy on the part of Milner to fraudulently obtain the ownership of these lands from the United States.'

In bringing suit in this form, without making the state of Utah a party, it is evident that the government relied on the principles announced in Williams v. United States, 138 U. S. 514, 11 S. Ct. 457, 34 L. Ed. 1026. In that case it was held, on a similar state of facts, that the state of Nevada was not a necessary party to the suit, and that the contract between it and its purchaser operated to vest the equitable interest in the lands in him, the legal interest being retained as security for the purchase price. This court said:
> 'The state of Nevada might have intervened. It did not, doubtless because it felt it had no real interest. It was no intentional party to any wrong upon the general government. If its agency had been used by the wrongdoer to obtain title from the general government; if, conscious of no wrong on its part, it had obtained from the general government the legal title and conveyed it away to the alleged wrongdoer, it might justly say that it had no interest in the controversy, and that it would leave to the determination of the courts the question of right between the government and the alleged wrongdoer, and conform its subsequent action to that determination. That certainly is the dignified and proper course to be pursued by a state, which is

charged to have been the innocent instrumentality and agent by which a title to real estate has been wrongfully obtained from the general government.' Pages 516, 517 (11 S. Ct. 458).

The present suit is founded on the allegation that the state of Utah, not conforming its action to the decision in the first suit, despite the decree and the findings of *645 fraud upon which it was based, has conveyed the legal title to the fraudulent purchasers. The bill was filed in May, 1924, against the Carbon County Land Company and the Independent Coal & Coke Company, petitioners here, and others whose interests are not now material. It sets up the equitable title or interest of the United States in the land, based upon the decree in the first suit, a copy of which, with the opinion of the Circuit Court of Appeals in that case, it incorporated; the conveyance by patent of the state's legal interest to petitioner, the Carbon County Land Company; and explains that the Independent Coal & Coke Company was made a party as it claims an interest in a part of the lands, the full nature and extent of which is unknown to plaintiff. The relief asked is that a trust be impressed in favor of plaintiff; that defendants be ordered to convey whatever title they have, subject only to any mortgages the state may have retained in conveying the legal title; and that they be enjoined from mining coal.

The defendants separately moved to dismiss the bill on the ground that it failed to state a cause of action against any of them and that the action was barred by the statute of limitations (Act of March 3, 1891, c. 561, s 8, 26 Stat. 1095, 1099 (Comp. St. s 5114)), limiting suits by the United States to vacate and annul patents to six years from the date of issue. The judgment of the District Court dismissing the bill as barred by the statute was reversed by Circuit Court of Appeals for the Eighth Circuit. 9 F. (2d) 517. This court granted certiorari. 270 U. S. 639, 46 S. Ct. 355, 70 L. Ed. 774.

Petitioners maintain that the bill fails to allege any facts showing that the Carbon County Land Company is a trustee of the lands, or bound in equity to surrender them to the government. Conceding the full force and effect of the decree in the first suit, they assert that the state of Utah was not a party to it, or bound by its decree; that the title of the state, if ever open to attack by *646 the United States, ripened into an indefeasible title by lapse of time under the six-year statute of limitations; and that petitioner may clothe themselves with the protection of that title despite the decree in the earlier suit.

We may assume for the purposes of the present case, without deciding, that the state officials were not cognizant of the fraud perpetrated upon the United States, and that the legal title of the state was not affected by the decree in the first suit, although the United States in an appropriate proceeding might have procured the annulment of the certification, at least within the period of limitations. Cf. United States v. Sweet, supra; Mullan v. United States, supra. But it does not follow that the defendants in the first suit could receive from the state the fruits of their fraud free of an equitable obligation to make restitution **717 to the government, or that the United States could not avail itself of all that was adjudged in its favor by the decree in the first suit, even if its original cause of action against the state were barred. By the contracts of purchase, Milner and his associates acquired an equitable interest in the land. Williams v. United States, supra. Their interest was transferred to the Carbon County Land Company, created and controlled by them for that purpose, as a part of the fraudulent conspiracy condemned in the first suit. The decree in that suit is conclusive that the company was a party to the fraudulent scheme or conspiracy to acquire title to the public lands by using the state and its officials as agencies to procure the transfer. The decree not only established that the United States was the true and full owner of the land to the exclusion of the defendants, but perpetually enjoined them from setting up or making any claim to the lands. This and the issues of fact there resolved in favor of the United States, and pleaded here, lead to the conclusion that none of the defendants, nor any claiming under them with notice, could by any legal *647 device, however ingenious, acquire title from the state free from the taint of their fraud.

[1][2] The suit is in the nature of a supplemental bill in aid of the former decree and is an appropriate method of securing the benefit of the first decree when subsequent events have made necessary some further relief in order that the plaintiff may enjoy the full fruits of the victory in the first suit. Cf. Root v. Woolworth, 150 U. S. 401, 14 S. Ct. 136, 37 L. Ed. 1123; Shields v. Thomas, 18 How. 253, 262, 15 L. Ed. 368; Thompson v. Maxwell 95 U. S. 391, 24 L. Ed. 481; Story, Equity Pleading (10th Ed.) ss 338, 339, 345, 351(b), 353, 429, 432; Cooper, Equity Pleading, 74, 75. In determining the scope of the present bill and the relief which may be given upon it, we may consider the pleadings and proceedings in the earlier suit, the nature of which are fully disclosed in the opinion and decree in that suit, which are pleaded here.

[3][4][5][6] It is ancient and familiar learning that one who fraudulently procures a conveyance may not defeat the defrauded grantor or protect himself from the consequences of his fraud by having the title conveyed to an innocent third person. Cf. Merry v. Abney, Freem. C. C. 151; Moore v. Crawford, 130 U. S. 122, 128, 9 S. Ct. 447, 32 L. Ed. 878; Girard Co. v. Lamoureaux, 227 Mass. 277, 116 N. E. 572. McDaniel v. Sprick, 297 Mo. 424, 249 S. W. 611. Equity may follow the property until it reaches the hands of an innocent purchaser for value. Even then the wrongdoer may not reacquire it free of the obligation which equity imposes on one who despoils another of his property by fraud or a breach of trust. The obligation in personam to make restitution persists and may be enforced by compelling a return of the property itself whenever and however it comes into his hands. Bovey v. Smith, 1 Vern. 60; Kennedy v. Daly, 1 Sch. & L. 355, 379; Williams v. Williams, 118 Mich. 477, 76 N. W. 1039; Talbert v. Singleton, 42 Cal. 390; Schutt v. Large, 6 Barb. (N. Y.) 373, 380; Church v. Ruland, 64 Pa. 432, 444; Troy City Bank v. Wilcox, 24 Wis. 671; Lewin, Trusts (12th Ed.) 1102.

**\*648** So also, a purchaser with notice of an outstanding equity, despite a transfer to an innocent purchaser for value, may not on a later repurchase hold free of the equity. Clark v. McNeal, 114 N. Y. 287, 21 N. E. 405, 11 Am. St. Rep. 638; McDaniel v. Sprick, supra, 439 (249 S. W. 611); Phillis v. Gross, 32 S. D. 438, 449, 143 N. W. 373; Yost v. Critcher, 112 Va. 870, 876, 72 S. E. 594. 2 Pomeroy, Equity, s 754. So here the obligation, having its inception in the fraud which was established in the first suit, has been confirmed by the decree and persists as to every interest acquired by petitioners under the contracts with the state or which may be enjoyed by them as the fruit of their fraud, even though we assume for the moment that the title acquired by them could not have been challenged while in the hands of the state.

It having been adjudicated that the government is the true owner of whatever rights the land company acquired under the earlier contracts with the state, the decree must be deemed either to have transferred those rights to the government or to have determined that the government is equitably entitled to have them so transferred. If the former, the government may assert the rights under the contract against the land company, as holder of the legal title, as it might against any other purchaser of the land from the state with notice. Bird v. Hall, 30 Mich. 374. If the latter, the land company could not acquire the lands even through a new and independent contract without a surrender of such rights as it had under the earlier contracts, and it could not make the surrender effective against the United States, the real owner, without its assent, unless the state stood in the position of a purchaser for value without notice. To these rights the government is equitably entitled, and hence may at its election claim the benefit of their proceeds in the hands of the land company. Cf. United States v. Dunn, 268 U. S. 121, 45 S. Ct. 451, 69 L. Ed. 876; Taylor v. Kelly, 56 N. C. 240; Haughwout & Pomeroy v. Murphy, 22 N. J. Eq. 531, 547.

**\*649** Even if the title acquired were through a new and independent contract and even though it were not in a strick sense proceeds of the earlier contracts, the relation of the land company and its equitable obligation to the government, and its duty under the decree in the first suit, are such as to preclude the acquisition of any outstanding interest in **\*\*718** the land in violation of the decree, free of that obligation and duty. Cf. Keech v. Sandford, Sel. Cas. 61; Lurie v. Pinanski, 215 Mass. 229, 102 N. E. 629; Anderson v. Lemon, 8 N. Y. 236; Holridge v. Gillespie, 2 Johns. Ch. (N. Y.) 30; Griffith v. Owen, L. R. (1907) 1 Ch. 195; Phillips v. Phillips, L. R. 29 Ch. Div. 673. But cf. Bevan v. Webb, L. R. (1905) 1 Ch. 620; and see also, Fair v. Brown, 40 Iowa, 209; Kezer v. Clifford, 59 N. H. 208; Hall v. Westcott, 15 R. I. 373, 5 A. 629; Middletown Savings Bank v. Bacharach, 46 Conn. 513.

We need not inquire now whether there may be defenses to the cause of action stated in the bill. It is enough for present purposes that, despite unskilled draftsmanship, it sets out facts sufficient, on a motion to dismiss, to support the relief prayed.

[7][8] But it is argued that there are no allegations showing that petitioner, Independent Coal & Coke Company, is a party to the fraud or what interest it claims in the lands, or that it acquired any interest from or under any other party to the transaction. But we think it fairly inferrable from the bill, taken as a whole, that the interest alleged to be claimed by the coal company was one arising subsequent to the conveyance by the state to the land company. The bill sets up title in the United States and its transfer to the state alleging that the state of Utah in making the transfer relied on the fact that it had not parted with the legal title to the lands at the time of the decree. This in effect is an averment that the interest claimed by the **\*650** coal company was acquired subsequent to the certification by the United States to the state. Whatever interest it acquired after that event, it took subject to the equities of the United States, and if from the land company, subject also to all of the equities against that company, unless the purchase price was

bona fide. Bona fide purchase is an affirmative defense. Wright-Blodgett Co. v. United States, 236 U. S. 397, 403, 35 S. Ct. 339, 59 L. Ed. 637.

[9][10] The statute of limitations relied on provides that suits by the United States 'to vacate and annul any patent * * * shall only be brought within six years after the date of the issuance of such patents.' A point much argued here was whether a certification of public lands is a patent within the meaning of the statute. But that is a question which we need not decide. Statutes of limitation against the United States are to be narrowly construed. United States v. Whited & Wheless, 246 U. S. 552, 561, 38 S. Ct. 367, 62 L. Ed. 879. And we think it plain that the present suit, founded on equitable grounds, to compel a conveyance of title derived from a certification by the government is not a suit to cancel the certification. See United States v. New Orleans Pacific Ry., 248 U. S. 507, 510, 518, 39 S. Ct. 175, 63 L. Ed. 388.

We hold that the acquisition of the title of the lands by the land company as set out in the bill was in violation of equitable principles and of the decree enjoining the defendants in the first suit 'from setting up or making any claim to the premises,' and that a proper case was stated for the imposition on both petitioners of a constructive trust with respect to the lands acquired by them. As the bill is not well drafted, respondent should have leave to perfect it. This will promote an orderly and intelligent disposition of the case.

Affirmed.

Mr. Justice McREYNOLDS, Mr. Justice SUTHERLAND, and Mr. Justice BUTLER dissent.

274 U.S. 640, 47 S.Ct. 714, 71 L.Ed. 1270

END OF DOCUMENT