EXHIBIT "C"

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

613 P.2d 1057
289 Or. 349, 613 P.2d 1057
**(Cite as: 289 Or. 349, 613 P.2d 1057)**
<KeyCite History>

Supreme Court of Oregon.
H. B. STEVENS; Merl G. Tucker and Verla M. Tucker, husband and wife,
Respondents,
v.
AMERICAN SAVINGS INSTITUTION, INC., a Washington Corporation; and Dr. Antonio Fernandez, aka Antone Fernandez, aka Dr. Anthony Fernandez, Defendants,
Publishers Paper Co., a Delaware Corporation, Petitioner.
CA 11582; SC 26673.

Argued and Submitted March 4, 1980.
Decided July 15, 1980.

Grantors brought suit to rescind their deed, mortgage and note to grantee and grantee's deed to subsequent purchaser. The Circuit Court, Clackamas County, Gordon W. Sloan, Senior Judge, entered decree rescinding the instruments as prayed for by the grantors and subsequent purchaser appealed. The Court of Appeals, 43 Or.App. 191, 602 P.2d 669, held that the subsequent purchaser had not established its claim to be a bona fine purchaser without notice and affirmed the order of rescission. The Supreme Court, Howell, J., granted review and held that the subsequent purchaser was deemed to have known of grantors' continued possession of entire tract by their continued possession of a portion of it, and was under a duty to inquire about such possession and therefore, subsequent purchaser failed to sustain its burden of proving its affirmative defense that it was a bona fide purchaser without notice.

Affirmed.

West Headnotes

[1] Vendor and Purchaser k239(9)
400k239(9)
Rule that if grantor fails to use escrow device as means of minimizing fraudulent use of his deed, grantor should bear loss as against purchaser who has no knowledge of fraud or of facts which put him on inquiry only applies if subsequent grantee can qualify as purchaser who had no knowledge of fraud or of facts which would put him on inquiry.

[2] Vendor and Purchaser k242
400k242
In suit by grantors to rescind deed, mortgage and note to grantee and grantee's deed to subsequent purchaser, subsequent purchaser had burden of proof at trial as to its affirmative defense of being purchaser without notice.

[3] Vendor and Purchaser k232(5)
400k232(5)
Possession of real property by prior grantor or by someone other than grantor is fact that provokes duty on part of purchaser to inquire.

[4] Vendor and Purchaser k232(5)
400k232(5)
Where subsequent purchaser's employee originally offered to purchase just timberland, but was informed that grantors would not break up property but wanted to sell entire premises, and subsequent purchaser, prior to purchase from intervening grantee, investigated title to timberland and discovered that deed from grantors to intervening grantee covered entire premises and that farmland and timberland were in one single undifferentiated parcel, subsequent grantee was deemed to have known of grantors' continued possession of farmland, and such knowledge put subsequent purchaser under duty to inquiry whether grantors had interest in timberland.

[5] Vendor and Purchaser k232(5)
400k232(5)
Where grantors had possessed entire premises, farmland and timberland, prior to sale to intervening grantee without building logging roads or cutting timber in timberland area, and had anyone actually seen grantors on land after sale, it would have appeared that their possession had not changed, and that they had not conveyed possession and ownership to intervening grantee, grantors, as respects issue of notice to subsequent purchaser of such possession, did continue to possess entire premises after sale to intervening grantee.

[6] Vendor and Purchaser k232(5)
400k232(5)
If prospective purchaser, seeking to buy timberland portion of what it knows to be entire single tract, discovers that prior grantor is still in possession of

**Exhibit C**

entire tract, such purchaser would be under duty to inquire of prior grantor nature of his continued possession.

[7] Vendor and Purchaser k229(1)
400k229(1)
Where subsequent purchaser would have learned that grantors held mortgage on timberland and had standard timber restriction clause covering such land had inquiry been made, and discovery of such facts would have immediately informed both parties that initial grantee was defrauding grantors, subsequent purchaser was charged with knowledge of fraud because it would have learned of fraud had it made reasonable inquiry, and therefore, subsequent purchaser failed to sustain its burden of proving status of bona fide purchaser without notice.

*350 **1058 William B. Crow, of Miller, Anderson, Nash, Yerke & Wiener, Portland, argued the cause and filed briefs for petitioner.

Michael J. Clancy, Canby, argued the cause for respondents. With him on the brief were Raymond R. Reif, and Bettis & Reif, Canby.

Before DENECKE, C. J., and TONGUE, HOWELL, LENT and PETERSON, JJ.

*351 HOWELL, Justice.

Plaintiffs, grantors, filed this suit to rescind a conveyance to American Savings Institution, Inc. (American Savings), relating to 85 acres of timber and farmland. The suit also sought rescission of a mortgage and promissory note executed by American Savings in favor of plaintiffs concerning the same property and rescission of a conveyance by American Savings to Publishers Paper Company (Publishers) of the timberland only. The trial court found that the president of American Savings, defendant Fernandez, had fraudulently obtained the conveyance from plaintiffs to American Savings, and entered a decree rescinding both conveyances and the mortgage from American Savings to plaintiffs. The decree also provided that Publishers have judgment against defendants American Savings and Fernandez for the amount Publishers paid for the timberland. Only Publishers appealed the decision of the trial court, contending that, because it had purchased the timberland for value and without notice of plaintiffs' claims, it should be declared owner of the timberland. The Court of Appeals affirmed the trial court, 43 Or.App. 191, 602 P.2d 669 (1979), and we granted review.

Plaintiffs Merl and Verla Tucker, together with plaintiff H. B. Stevens, acquired the 85-acre parcel of land in 1964. About 56 acres of the parcel were timberland; the balance of cleared and used for farming. The Tuckers lived in a house on the land until they moved in 1972. Stevens lived in a trailer home situated close to the main home and continued to live there throughout the land transactions and this suit. The two houses, along with barns and sheds, were located on the cleared portion of the 85-acre parcel.

Plaintiffs decided to sell the 85 acres and contacted Publishers. Robert Booth, a Publishers employee, inspected and appraised the property and offered Stevens $85,000 for the timberland only. Plaintiffs rejected the offer because they did not want *352 to divide the property and sell just the timberland. Booth then decided to purchase the farmland for himself as an accommodation to Stevens and offered an additional $15,000 for the farmland. Plaintiffs eventually rejected the offer and sought another independent land appraisal. They then listed the entire property with several realtors at a sale price of $155,000.

On January 20, 1976, defendant Fernandez visited Stevens, inspected the property and, on behalf of American Savings, offered to purchase the entire 85 acres for the full price of $155,000. Fernandez executed a written offer, entitled "Deposit Receipt and Agreement of Sale," by the terms of which American Savings would pay $30,000 as a **1059 down payment and $125,000 in five equal annual payments; the contract of sale would contain a "standard timber restriction" clause (i. e., no timber would be cut until one-half of the purchase price is paid); the transaction would be closed through escrow, and Stevens would have the right to remain on the property up to 90 days after closing of the escrow. Plaintiffs accepted Fernandez's offer the next day.

Over the next couple of days Fernandez met with Stevens and the Tuckers and discussed arrangements for their splitting of the proceeds from the sale. He drafted and plaintiffs signed a document that specified how plaintiffs would share in the proceeds. But that document, entitled "Agreement," also provided the following: American Savings agreed that Stevens would have 90 days to remove his house trailer from the premises; the total sales price would be $155,000 in payments as arranged in the first Agreement of Sale (dated January 20, 1976); the first Agreement of Sale and all its conditions and restrictions are null and void; and "title and possession are in the grantee, by virtue of deed executed by grantors and herewith handed to

grantee."

On January 31, 1976, plaintiffs signed a warranty deed conveying to American Savings the entire *353 parcel of property, and they and Fernandez, on behalf of American Savings, signed a mortgage prepared by Fernandez whereby American Savings promised to pay $155,000 for the land as per the agreed payment schedule. Neither the deed nor the mortgage contained the conditions the plaintiffs had intended, i. e., the 90-day permissive occupancy for Stevens and the standard timber restriction clause. On the contrary, the mortgage specifically provided:

> " * * * that the mortgage does not extend to the land with timber coverage in lieu of Note-Payment made to Grantors; that the premises are in the exclusive possession of Mortgagor and they shall remain thus; * * *."

Plaintiffs deny that they knew or agreed to this provision. Plaintiff Merl Tucker testified that the mortgage he signed did cover the timberland and that Fernandez must have altered the mortgage afterward. Fernandez recorded his deed from plaintiffs on February 4, 1976, but he did not record the mortgage until February 23, 1976, after he had sold the timberland to Publishers.

Prior to February 4, 1976, after he had begun negotiating with plaintiffs, Fernandez contacted Publishers and offered to sell the timberland. He told Publishers that he wanted to close the timberland sale by February 14, 1976. Booth, the Publishers employee, reappraised the land without an inspection but merely relying on his knowledge or logging activity in the area and on his previous appraisal. He determined that Publishers should pay only $80,000 for the timberland. Fernandez asked $85,000 for the timberland but quickly assented to a sale price of $80,000. Publishers then obtained a preliminary title report on February 5, 1976, that showed that American Savings had purchased the entire parcel (timberland and farmland) from plaintiffs and held title as of February 4, 1976. Fernandez, on behalf of American Savings, executed a deed on February 10, 1976, conveying the timberland to Publishers. That deed was recorded on February 13, 1976.

*354 Receiving his money from Publishers, Fernandez paid plaintiffs their down payment on February 13, 1976. Stevens continued to live on the property and continued to be in contact with Fernandez. Plaintiffs did not suspect any irregularities in their transaction with Fernandez until April of 1976 when they read newspaper accounts of criminal and civil charges pending against Fernandez. Plaintiffs then investigated and discovered that Fernandez, on behalf of American Savings, had conveyed the timberland to Publishers.

The trial court held that the conveyance from American Savings to Publishers should be rescinded because Publishers failed to prove its affirmative defense that it was a bona fide purchaser without notice. Publishers argues that because plaintiffs, by their own negligence, vested title in their grantee, plaintiffs made the fraud possible and should bear the loss as **1060 against Publishers, an innocent subsequent purchaser. Publishers relies on our decision in Webb v. Stewart, 255 Or. 523, 469 P.2d 609 (1970), in which we held that if a grantor fails to use the escrow device as a means of minimizing the fraudulent use of his deed, the grantor "should bear the loss as against a purchaser who has no knowledge of the fraud or of facts which would put him on inquiry." Id. at 533, 469 P.2d at 614.

(1) The facts of this case do indicate that plaintiffs failed to use the escrow device and also failed to use reasonable care in handling the transaction to protect their interests. Nevertheless, the rule in Webb will only apply if Publishers can qualify as a purchaser who had no knowledge of the fraud or of facts which would put it on inquiry.

(2) In Murray v. Wiley, 169 Or. 381, 405, 127 P.2d 112, 129 P.2d 66 (1942), we held that, in suits in equity, the claim of a bona fide purchaser for value is an affirmative defense and the burden of proof is on the party asserting the defense. Therefore, Publishers, which asserted the affirmative defense of being a *355 purchaser without notice, had the burden of proof at trial as to its defense.

The Court of Appeals held that, because plaintiff Stevens remained in possession of the entire property throughout the period of the land transactions, Publishers had a duty to make a reasonably diligent inquiry as to plaintiff Stevens' interest in the land. Because Publishers failed to make an inquiry, the Court of Appeals held that Publishers is charged with knowledge of all facts it might have learned had a diligent inquiry been made. Therefore, the Court of Appeals concluded, Publishers failed to prove that it was a bona fide purchaser without notice. 43 Or.App. at 196-98, 602 P.2d 669.

Publishers argues that the Court of Appeals erroneously concluded that plaintiff Stevens was in actual possession of the premises. Actually,

Publishers contends, the property owned by plaintiffs and deeded to Fernandez was divided into two distinct tracts: farmland and timberland. Publishers concedes that Stevens was in continued possession of the farmland but argues that Stevens was not in possession of the timberland, because Stevens cut no timber, built no logging roads and took no steps to show subsequent purchasers that he had a continued interest in the timberland.

Publishers explains that it had no interest in the farmland and had no duty to inquire of Stevens' possession of the farmland. It was only concerned with purchasing the timberland, and, as long as plaintiffs were not in possession of the timberland, Publishers argues that it had no notice of plaintiffs' interest and no duty to inquire of plaintiffs. In support of its arguments Publishers cites the following from 1 Merrill on Notice 177, s 148 (1952):

> "If two tracts are entirely distinct and separate, even though adjoining, occupancy of one does not suggest any necessity for asking about the occupant's claim of title to the other."

**\*356** Before we answer Publishers' specific arguments, we should briefly explain the law on notice and possession. According to Merrill, supra at 68, s 66, there is no general duty on the part of a purchaser to inquire. The duty to inquire arises, however, when facts exist that would provoke a reasonable and prudent person to investigate his prospective purchase.

(3) Possession of real property by a prior grantor or by someone other than his seller is a fact that provokes the duty on the part of a purchaser to inquire. See Webb v. Stewart, supra 255 Or. at 536-38, 469 P.2d 609; Merrill, supra at 122 s 97. Merrill explains:

> " \* \* \* (T)he dictates of ordinary prudence are regarded as impelling one buying real estate to inspect it. Accordingly, possession is held to be effective notice of its own existence, whether it is known or not. \* \* \*. This notification charges the prospective purchaser or incumbrancer with notice that the possession exists. The effect of this as notice **\*\*1061** of the possessor's claim to the land depends upon whether, if it were actually known to him, it would be sufficient to challenge his inquiry. In other words, the unknown possession serves as notification of its existence and also, in law, as a stimulus to investigation concerning the possessor's title. It has no greater effect than known possession. The function of the holding in either case in not to affect one contemplating acquisition of an interest with conclusive notice of the possessor's claim but merely to furnish an occasion for inquiry. \* \* \* "
>
> Id. (Emphasis added.)

Essentially, Publishers argues that, even if it had known that Stevens was in continued possession of the farmland, it would not have been under a duty to inquire whether Stevens had any interest in the timberland. The basis of this argument is Publishers' contention that the farmland and the timberland are two separate and distinct tracts of land.

(4) The facts of this case clearly show, however, that the farmland and the timberland should not be considered as two separate and distinct tracts and that **\*357** Publishers was aware of the unity of the entire property. First, when Booth, Publishers' employee, originally offered to purchase just the timberland, Stevens informed him that the plaintiffs would not break up the property but wanted to sell the entire premises. Second, when Publishers investigated the title to the timberland they discovered that the deed from plaintiffs to American Savings covered the entire premises and that the farmland and timberland were in one single undifferentiated parcel. Therefore, we must reject Publishers' contention that the timberland was distinct from the farmland.

(5) Finally, as to the quality of the plaintiffs' continued possession, we must agree with the trial court and the Court of Appeals that Stevens did continue to possess the entire premises. Stevens had obtained the right to continue possessing the entire premises in his original agreement with Fernandez. Stevens, in fact, continued to use the premises in the same manner as he had done during the previous years. The fact that Stevens did not build logging roads or cut timber in the timberland area is irrelevant. Prior to the sale to American Savings, Stevens possessed the entire premises, farmland and timberland, without performing those acts. Had anyone actually seen Stevens on the land after the sale to American Savings, it would have appeared that Stevens' possession had not changed, and that he had not conveyed possession and ownership to American Savings.

(6) We can only conclude that if a prospective purchaser, seeking to buy a timberland portion of what it knows to be an entire single tract, would discover that the prior grantor is still in possession of the entire tract, then that purchaser would be under a duty to inquire of the prior grantor the nature of his continued possession. Therefore, because Publishers is deemed to have known of Stevens' continued possession, Publisher was under a duty to inquire.

**\*358** (7) In the present case, had Publishers made a reasonable inquiry and informed Stevens that the inquiry was in preparation for its purchase of the timberland from Fernandez, then Stevens would have informed Publishers that plaintiffs held a mortgage on the timberland and had a "standard timber restriction" clause covering the land. The discovery of these facts would have immediately informed both parties that Fernandez was defrauding plaintiffs. Publishers is therefore charged with knowledge of the fraud because it would have learned of the fraud had it made a reasonable inquiry. Murray v. Wiley, supra 169 Or. at 407, 127 P.2d 112.

We therefore, conclude that Publishers failed to sustain its burden of proving its affirmative defense. Publishers was not entitled to the status of a bona fide purchaser without notice.

Affirmed.

289 Or. 349, 613 P.2d 1057

END OF DOCUMENT